Basant CHATTERJEE, Plaintiff,

v.

SCHOOL DISTRICT OF PHILADEL-
PHIA, Philadelphia Federation of
Teachers, and the following individu-
als in their individual capacities:
David W. Hornbeck, Jeanette W.
Brewer, Joyce B. Harrison, Sheldon
Jahss, Henry Parks, Michael Neider-
man, James Lytle, Ted Kirsch, Jerry
Jordan, and Maxine Stutman, Defen-
dants.

No. Civ.A. 99–4122.

United States District Court,
E.D. Pennsylvania.

Oct. 2, 2001.

510

Basant Chatterjee, Philadelphia, PA, pro se.

Rosemarie Rhodes, Harper & Paul, Philadelphia, PA, for Dr. Basant Chatterjee.

Linda M. Martin, Willig, Williams and Davidson, Philadelphia, PA, for Philadelphia Federation of Teachers, Ted Kirsch, Jerry T. Jordan, Maxine Stutman.

Michael J. Feinberg, Philadelphia, PA, for School Dist. of Philadelphia, David W. Jornbeck, Jeanette W. Brewer, Joyce B. Harrison, Sheldon Jahass, Henry Parks, Michael Neiderman, James Lytle.

## OPINION

POLLAK, District Judge.

This is a suit filed *pro se* by Dr. Basant Chatterjee on August 16, 1999 against two groups of defendants: the School District of Philadelphia ("the District") and several of its administrators in their individual capacities (together, "the District defendants"), and the Philadelphia Federation of Teachers ("the Federation") and three of its officials in their individual capacities (together, "the Federation defendants"). Dr. Chatterjee, who describes himself as "born in India of Asian race," Second Am. Compl. § II ¶ 1, has alleged that his discharge from employment with the District was discriminatory and otherwise unlawful under various federal and state statutes, the United States Constitution, and the Pennsylvania state law of torts and contracts. Before the Court are motions to dismiss filed by the District defendants and the Federation defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, the motions are denied with respect to plaintiff's claims against the District under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.* The motions are granted on all other claims, including the remaining claims against the District, all claims against those employees of the District in their individual capacities, and all claims against the Federation defendants.

## I. Facts

Plaintiff has made scrupulously detailed allegations of fact in his Second Amended Complaint. Only those alleged facts relevant to the instant motions are recounted here. As is proper when confronted with a motion to dismiss, all facts alleged by the plaintiff have been taken as true and have been construed in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998), *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997).

Between 1973 and 1996, Dr. Chatterjee was employed by the District as a mathematics teacher and worked at University City High School in Philadelphia. Twenty years into his tenure at the school, Dr. Chatterjee took on several extra-curricular appointments in addition to his teaching responsibilities.

During the 1994 school year, Dr. Chatterjee alleges that the school's acting principal "began to harass and discriminate against" him. He has not provided an elaboration in his Second Amended Complaint as to the content or substance of this allegedly discriminatory conduct of 1994. During the same time period, Dr. Chatterjee claims to have "observed discrimination among Asian students and subsequently informed the local news media." *Id.* at ¶ 5. Dr. Chatterjee filed a discrimination claim with the Pennsylvania Human Relations Commission ("PHRC") on March 9, 1995. The school's new prin-

cipal, James Lytle, initiated a private meeting with Dr. Chatterjee and told him "that he had received communication from the school district's legal department to inquire about Plaintiff's claim of harassment and discrimination." *Id.* at ¶ 7. Following this meeting, Dr. Chatterjee withdrew his complaint with the PHRC on May 25, 1995.

The following school year, Dr. Chatterjee alleges several instances in which he was unjustifiably and irrationally singled out from his white colleagues. First, he alleges that he was stripped of authority in his capacity as a program director when Lytle began entrusting responsibility to Dr. Chatterjee's program assistant; the program assistants of the school's other program directors, all of whom were white males, were not permitted to take on such responsibilities. Second, on October 24, 1995, Lytle circulated a survey among the faculty members regarding Dr. Chatterjee's performance as a program director; white program directors were never evaluated in this manner. Third, Dr. Chatterjee was specifically criticized in his official performance record for failing to address certain school-wide problems—problems for which all faculty members should have shared responsibility. Fourth, Dr. Chatterjee was the only one of 140 faculty members to receive a mid-year performance evaluation in 1995. Fifth, he was denied compensation for time spent supervising students during their lunch hour and for his extra-curricular work, whereas white faculty members were compensated for such responsibilities.

During the same time period, Dr. Chatterjee also claims to have been subjected to false investigations and charges by the school's administrators in connection with his professional performance and conduct. The accusations culminated in his termination in the summer of 1996. Dr. Chat-

terjee alleges that, in making these false charges, the school administrators were responding to his filing of discrimination charges with the PHRC and his role in informing the news media of discrimination at the school. First, in September 1995, Dr. Chatterjee was accused of misappropriating funds from his extra-curricular programs and of writing proposals for his own personal gain; Dr. Chatterjee contends that the proposals he wrote and the compensation he received were legitimate, and were substantially similar to the proposals written and compensation received in previous years by white faculty members. Second, Dr. Chatterjee was informed by a memorandum from Lytle dated October 2, 1995 that he had made "several thousands of dollars" worth of unauthorized expenditures; Dr. Chatterjee asserts that Lytle fabricated these allegations. Third, on November 28, 1995, Dr. Chatterjee was accused of changing the locks of certain storage areas without authorization and of failing to provide the other teachers with keys; Dr. Chatterjee maintains that he followed proper administrative procedures at all times in connection with this incident. Fourth, in his official performance record, Dr. Chatterjee was accused of failing to supply his extra-curricular programs with needed supplies and equipment; Dr. Chatterjee asserts that he was again following proper administrative procedures whereby as a faculty member he was not permitted to purchase such supplies and equipment.

In connection with the accusations against Dr. Chatterjee of fiscal impropriety, the District initiated an audit of his expenditures and compensation. Dr. Chatterjee met with Maxine Stutman, his representative at the Federation, and District officials on February 6 and April 8, 1996 to discuss the accusations. On February 12, April 1, and May 8, 1996, Dr. Chatterjee wrote to the Superintendent of

Schools to register a complaint of discrimination and to indicate his intention of filing another complaint with the PHRC. On April 15, Lytle recommended to the Assistant Superintendent of Schools that Dr. Chatterjee be dismissed. On July 18, 1996, the District issued a letter to the Board of Education recommending that Dr. Chatterjee be terminated. Dr. Chatterjee found this letter on September 1, 1996 when he returned from his summer vacation.

Dr. Chatterjee conferred with Stutman on September 2, 1996. She advised him that he had two options if he wished to contest the termination: either to undertake a hearing with the Board of Education, or to pursue arbitration under the Federation's collective bargaining agreement. Stutman explained to Dr. Chatterjee the details of these two courses of action. Thereafter, Dr. Chatterjee made several unsuccessful attempts to discuss his situation further with Stutman, and to contact her supervisor at the Federation, Jerry Jordan, before finally reaching Jordan by phone. Jordan informed Dr. Chatterjee that Stutman had given him all the information he needed to reach a decision as to which course of action to pursue. Dr. Chatterjee requested a consultation with the Federation's legal services department, and was informed that, as he was no longer a union member, these services were unavailable to him. Dr. Chatterjee continued to attempt to contact Stutman and Jordan for several months. These attempts culminated in a letter sent to Stutman on May 7, 1997, to which Dr. Chatterjee received no response. In October 1998, Dr. Chatterjee, through his then attorney, scheduled a hearing before the Board of Education. By letter dated May 28, 1999, the request for a hearing was withdrawn.

On September 12, 1996, shortly after his discharge, Dr. Chatterjee filed another charge of discrimination with the PHRC. The PHRC referred the charge to the Equal Employment Opportunity Commission ("EEOC") for dual filing. On October 5, 1998, Dr. Chatterjee submitted an amendment to the charge, which was likewise dually filed. Dr. Chatterjee filed the instant action on August 16, 1999.

## II. Analysis

In his Second Amended Complaint, plaintiff alleges fifteen causes of action. There exists a certain amount of overlap among the fifteen, and it is therefore necessary to summarize and consolidate them as follows. Against the District defendants, plaintiff alleges the following: discrimination, hostile work environment harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Pennsylvania Human Rights Act ("PHRA"), 43 Pa.Stat.Ann. § 951 *et seq.;* deprivation of constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution; discrimination in employment contracting in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981; deprivation of constitutional rights as enforced through 42 U.S.C. § 1983 and the PHRA; civil conspiracy pursuant to 42 U.S.C.1985 (3); denial of the opportunity to elect continuation coverage in violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.;* withholding of wages in violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 PaCons.Stat.Ann. §§ 260.1–260.12; violations of 43 Pa.Cons.Stat.Ann. § 1312; and defamation, fraud and breach of contract under Pennsylvania law. Against the Federation defendants, plaintiff alleges: discrimination in violation of Title VII and the PHRA; violations of 42 U.S.C. §§ 1981

and 1983; breach of the duty of fair representation pursuant to § 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a); and intentional infliction of emotional distress, intentional interference with contractual relations, and defamation under Pennsylvania law. These claims will be addressed not in the order in which they appear in the complaint, but in an order suggested by the substance of defendants' motions.

## A. Claims Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Pennsylvania Human Rights Act ("PHRA"), 43 Pa.Stat. Ann. § 951 et seq.

■ Both Title VII and the PHRA prohibit discriminatory practices in employment decisions, practices and procedures. "Courts have uniformly interpreted the PHRA consistent with Title VII." *Harris v. SmithKline Beecham*, 27 F.Supp.2d 569, 576 (E.D.Pa.1998). *See also Bailey v. Storlazzi*, 729 A.2d 1206, 1211 n. 6 (Pa.Super.1999). Dr. Chatterjee has alleged three claims under these statutes. First, against the District defendants and the Federation defendants, he alleges that he was discharged on account of his Indian national origin. Under Title VII, it is unlawful for an employer "to discharge any individual.. because of such individual's . . . national origin." 42 U.S.C. § 2000e–2(a)(1). Second, against the District defendants, he alleges that he was subjected to discriminatory harassment.[1] Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation,

terms, conditions, or privileges of employment, because of such individual's . . . national origin," *id.*, and for an employer "to limit, segregate or classify his employees . . . in any way which would . . . adversely affect his status as an employee, because of such individual's . . . national origin," *id.* at § 2000e–2(a)(2). A plaintiff who alleges a hostile work environment keyed to race, national origin, gender, or other status protected by Title VII, has stated a claim for discriminatory harassment under Title VII. *See, e.g., Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Oncale v. Sundowner Offshore Serv. Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Third, against the District defendants, he alleges that he was discharged in retaliation for having filed a discrimination complaint with the PHRC. Title VII protects from retaliation all individuals who have "opposed any . . . unlawful employment practice," or who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with alleged discriminatory conduct. 42 U.S.C. § 2000e–3(a).

Among them, the defendants have registered three objections to Dr. Chatterjee's claims under Title VII and the PHRA:

■ *First*, the District defendants and the Federation defendants argue that individuals are not liable in their individual capacities under Title VII and the PHRA. The Third Circuit considered this issue in *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir.1996) (en

---

1. In his Second Amended Complaint, Dr. Chatterjee has actually articulated both a claim for "Harassment" under Count III, Compl. at § VI, and an additional claim for "Hostile Work Environment" under Count III, Compl. at § VI. Both amount to the statement of a single cause of action for discrimi-
natory harassment; pleading a hostile work environment is simply one way for a plaintiff to state a case for harassment. *See, e.g., Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Bonenberger v. Plymouth Tp.*, 132 F.3d 20 (3d Cir. 1997).

banc), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997), and concluded that "Congress did not intend to hold individual employees liable under Title VII." *See also In re Montgomery County,* 215 F.3d 367, 372 (3d Cir.2000). Therefore, to the extent that Dr. Chatterjee has asserted claims under Title VII and the PHRA against employees of the District and the Federation in their individual capacities, those claims must be dismissed.

■■■ *Second,* the District defendants and the Federation defendants contend that Dr. Chatterjee's claims for discrimination and harassment should be dismissed because his EEOC charge failed to state that the basis for defendants' allegedly discriminatory conduct was his national origin. The administrative remedy scheme of Title VII was "designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action."[2] *Ostapowicz v. Johnson,* 541 F.2d 394 (3d Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). For this reason, "the aggrieved person is not permitted to bypass the administrative process." *Id. See also EEOC v. E.I. duPont de Nemours & Co.,* 516 F.2d 1297 (3d Cir.1975). In other words, a complainant must submit the sum and substance of his or her grievance to the EEOC before the court may consider it. The District objects to the fact that "nowhere within [his EEOC complaint] does the plaintiff specifically cite 'national

origin,' or even more vaguely allude to national origin, as being one of the bases for his allegedly discriminatory treatment by the defendant," District's Mot. to Dismiss p. 4; the Federation makes the same argument. However, defendants seem to have overlooked the fact that in his amended charge before the PHRC and the EEOC, filed on October 5, 1998, Dr. Chatterjee did indeed reference his national origin as the basis for his allegations of discrimination. In the amended charge, Dr. Chatterjee alleges that the District "harassed him, subjected him to adverse and disparate treatment and then wrongfully discharged him because of the national origin Asian and in retaliation for prior Pennsylvania Human Relations Commission complaint." Ex. A to Pl's Opposition to Mot. to Dismiss, ¶ 3. The procedure for filing and amending a charge of discrimination with the EEOC is governed by 29 CFR § 1601.12, which provides in relevant part: "A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 CFR § 1601.12(b). In view of the language in Dr. Chatterjee's amended charge, defendants have not advanced persuasive considerations for dismissal on these grounds.

---

**2.** Both Title VII and the PHRA require that claimants exhaust administrative remedies before bringing a civil action on their grievances. Specifically, under Title VII, the would-be plaintiff must first file a charge with the EEOC, complying with the limitations periods set forth in the statute. 42 U.S.C. § 2000e–5(e)(1). If the charge has not been resolved after 180 days after its filing, the EEOC is required to notify the complainant, *id.* at § 2000e–5(f)(1), by issuing a "right to sue" letter. The complainant may bring a private action within 90 days, 42 U.S.C. § 2000e–5(f)(1). Similarly, the PHRA mandates the filing of a charge before the PHRC before a complainant may bring a civil action. 43 Pa.Cons.Stat.Ann § 962(c)(1). *See Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917, 921 (1989).

■ *Third,* the Federation defendants have moved to dismiss this portion of Dr. Chatterjee's complaint on the grounds that he has not stated a cause of action for discrimination against the Federation or its employees. The parameters of a successful Title VII claim against a union defendant are less well-defined than those for claims against employer defendants. Even with respect to the latter, however, the Third Circuit has deemed it fair to avoid binding a plaintiff to an overly rigid test. In reflecting on the seminal decision of *McDonnell Douglas Corp. v. Green,* 414 U.S. 811, 94 S.Ct. 31, 38 L.Ed.2d 46 (1973), in which it first promulgated a four-part test for Title VII plaintiffs proceeding against employers, the Supreme Court has stated: "The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Int'l. Bhd. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). *See also Weldon v. Kraft, Inc.,* 896 F.2d 793, 797 (3d Cir.1990) (restating the *McDonnell Douglas* test to apply to a claim for discriminatory discharge). The Supreme Court has noted that "[t]he same reasons which prohibit an employer from discriminating ... apply equally to the union." *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 285, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

Notwithstanding the latitude afforded a Title VII plaintiff, Dr. Chatterjee has failed to allege facts from which the inference could be drawn that the Federation discriminated against him. He alleges that Federation officials failed to return his calls after he was discharged, but nowhere does he suggest that these omissions were based on his national origin or race. Furthermore, his allegations center around a situation in which the Federation had no further obligation to him, because he was no longer a dues-paying union member, and because it had discharged its responsibilities to him when it informed him of his choices subsequent to his termination. Given the sparseness of Dr. Chatterjee's allegations against the Federation, his claim against it under Title VII is dismissed.

In sum, Dr. Chatterjee's claims under Title VII and the PHRA against all individual defendants and the Federation must be dismissed. Dr. Chatterjee's claims under Title VII and the PHRA against the District survive these motions.

## B. Constitutional Claims

■ Dr. Chatterjee has alleged violations of the First, Fifth and Fourteenth Amendments to the United States Constitution by the District defendants. However, Dr. Chatterjee has not alleged wrongdoing on the part of federal government actors so as to implicate the Fifth Amendment. Moreover, a direct constitutional action such as this is impermissible because, insofar as Dr. Chatterjee has alleged wrongdoing on the part of local government actors, there exists an adequate statutory remedy for the violations alleged under 42 U.S.C. § 1983. *Compare Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that plaintiff had stated a federal cause of action under Fourth Amendment) *with Smith v. Sch. Dist. of Philadelphia,* 112 F.Supp.2d 417, 430 (E.D.Pa.2000) (holding that claims under the U.S. Constitution are not cognizable where § 1983 provided an adequate, alternative remedial scheme). In the instant case, the claims which Dr. Chatterjee has advanced directly under

the Constitution must therefore be dismissed.

## C. Pennsylvania Wage Payment and Collection Law (" WPCL"), 43 Pa-Cons.Stat.Ann. §§ 260.1–260.12

■ Dr. Chatterjee has charged the District defendants with wrongful withholding of wages in violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"). The WPCL defines the term "employer" to include "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 Pa.Stat.Ann. § 260.2a. This definition has been held not to embrace school districts. *Philipsburg–Osceola Educ. Ass'n. v. Philipsburg–Osceola Area Sch. Dist.*, 159 Pa.Cmwlth. 124, 633 A.2d 220, 223 (1993). Dr. Chatterjee's claims under the WPCL must therefore be dismissed.

## D. Claim under 43 Pa.Cons.Stat.Ann. § 1312

Dr. Chatterjee has purported to state a claim against the District defendants pursuant to 43 Pa.Cons.Stat.Ann. § 1312. This section of Pennsylvania's labor law sets forth a list of those criminal offenses which are considered "crimes related to public office or public employment ... when committed by a public official or public employee through his public office or position or when his public employment places him in a position to commit the crime." *Id.* Nothing in Dr. Chatterjee's Second Amended Complaint implicates this provision, and this claim will therefore be dismissed.

## E. Claim for COBRA violations, 29 U.S.C. § 1161 *et seq.*

■ The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") was enacted to amend the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*. COBRA entitles qualified beneficiaries of group health plans to "continuation coverage," *id.* at § 1161(a), after the occurrence of a "qualifying event"—such as the termination of employment—which would otherwise operate to deprive them of coverage, *id.* at § 1163. Under COBRA, an employer is obligated to notify such beneficiaries of this entitlement. *Id.* at § 1166. Dr. Chatterjee alleges that the District violated these provisions when it terminated him without affording him the opportunity to elect continuation coverage. In response, the District points out that termination of employment "by reason of [the] employee's gross misconduct" is not a qualifying event that triggers these provisions. *Id.* at § 1163(2). The District argues that the circumstances of Dr. Chatterjee's dismissal therefore relieved it of any obligation to provide him with continuation coverage.

COBRA does not define the phrase "gross misconduct." Other courts have applied the standards set forth in state unemployment compensation situations. *See, e.g., Rotto v. Haskells of Pittsburgh, Inc.*, 1997 WL 689437 * 5 (W.D.Pa.1997) ("gross misconduct" under COBRA defined with reference to Pennsylvania unemployment compensation cases); *Adkins v. United Int'l Investigative Services, Inc.*, 1993 WL 345186 (N.D.Cal.1993) (referencing California's unemployment compensation laws); *cf. Lloynd v. Hanover Foods Corp.*, 72 F.Supp.2d 469 (D.Del.1999) (court considered findings of fact as to terminated employee's job performance in state labor department's report on her eligibility for unemployment compensation). Under Pennsylvania law, "discharge ... for willful misconduct connected with ... work" disqualifies an employee from un-

employment compensation. 43 Pa.Cons. Stat.Ann. § 802(e). The Pennsylvania Supreme Court has defined "willful misconduct" to mean "wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer." *McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533, 535 (1978), quoting *Moyer v. Unemployment Compensation Bd.,* 177 Pa.Super. 72, 110 A.2d 753, 754 (1955). *See also Rotto,* 1997 WL 689437 at * 5.

■ On this motion to dismiss, which tests the sufficiency of Dr. Chatterjee's complaint, this court has no basis for concluding that Dr. Chatterjee was guilty of "gross misconduct" within the meaning of COBRA, or of its state law counterpart, "willful misconduct." Dr Chatterjee has stated a viable claim that he was entitled to elect continuation coverage upon termination. Therefore, the instant motion to dismiss must be denied with respect to Dr. Chatterjee's claims under COBRA.

**F. The Remainder of Plaintiff's Claims are Time–Barred**

■ Both the District defendants and the Federation defendants have moved for dismissal of several of plaintiff's claims on the ground that they are time-barred. Normally a defense based on the statute of limitations will not be considered in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); however, "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein,*

*Sedran and Berman,* 38 F.3d 1380, 1384 n. 1 (3d Cir.1994).

■ The timeliness of Dr. Chatterjee's claims must be determined with reference to August 16, 1999, the date when he filed his original complaint in this court, regardless of the fact that he filed two amendments to the complaint thereafter. Federal Rule of Civil Procedure 15(c)(2) provides: "An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." In this case, Dr. Chatterjee's original complaint clearly "set forth" the basic parameters of his experiences with the District, his discharge therefrom, and his representation by the Federation; therefore his two amended pleadings relate back to the date of his first filing. *See, e.g., United States v. Thomas,* 221 F.3d 430, 435–6 (3d Cir. 2000).

■ With respect to Dr. Chatterjee's claims against the District defendants, all relevant statutes of limitations began to run, at the very latest, on September 1, 1996. On that date, Dr. Chatterjee received the July 18, 1996 letter from the District stating its recommendation to the School Board that he be terminated. Dr. Chatterjee points out that the letter did not technically constitute a termination; even after the recommendation was entered, he still had the option to request a hearing before the Board, and only gave up that option on May 28, 1999. However, the thought processes pursued by Dr. Chatterjee subsequent to September 1, 1996 did not in any way implicate the District. The letter recommending Dr. Chatterjee's termination represents the last direct interaction alleged between the District and Dr. Chatterjee. Dr. Chat-

terjee's September 1, 1996 discovery of the letter is the last event that could set the clock running on his claims.

■ Dr. Chatterjee alleges a pattern of omissions and inaction by the Federation defendants which continued for over eight months after he received the District's letter. The latest date in his Second Amended Complaint which describes such omissions is May 7, 1997, when he wrote a letter to his Federation representative, defendant Maxine Stutman. Therefore, with respect to plaintiff's claims against the Federation defendants, any relevant statutes of limitations began to run, at the very latest, on May 7, 1997.

### Timeliness of Claims Under 42 U.S.C. §§ 1981, 1983, and 1985(3)

■ Plaintiff has asserted claims under 42 U.S.C. §§ 1981, 1983, and 1985(3) against all defendants. There is no federal statute of limitations for actions under §§ 1981, 1983, and 1985(3); the limitations period is determined with reference to the common law of personal injury in the forum state. 42 U.S.C. § 1988; *Wilson v. Garcia,* 471 U.S. 261, 272–76, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). *See also Lake v. Arnold,* 232 F.3d 360 (3d Cir.2000) (applying limitations period for state personal injury actions to §§ 1983, 1985(3) actions); *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers,* 855 F.2d 1080 (3d Cir.1988) (ap-

plying limitations period for state personal injury actions to §§ 1981 and 1983 actions). Pennsylvania's two-year statute of limitations for personal injury claims therefore applies. *See* 42 Pa.Cons.Stat. Ann. § 5524; *Kost v. Kozakiewicz,* 1 F.3d 176, 189–190 (3d Cir.1993).

■ More than two years elapsed after September 1, 1996 before plaintiff filed his complaint; therefore, all of plaintiff's claims against the District defendants under §§ 1981, 1983, and 1985(3) are time-barred.[3] More than two years elapsed from May 7, 1997 before plaintiff filed his complaint; therefore, his claims against the Federation defendants under §§ 1981, 1983, and 1985(3) are likewise time-barred.[4,5]

### Timeliness of Claims for Breach of the Duty of Fair Representation and Breach of Contract

■ Plaintiff has asserted claims against the Federation for breach of the duty of fair representation under § 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a), and against the District for breach of his collective bargaining agreement. Although plaintiff does not specify the authority on which he rests the latter claim, the apparent basis for it would be § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). *See DelCostello v. Int'l.*

---

**3.** It bears noting that Dr. Chatterjee's pursuit of administrative remedies for his Title VII grievance through the EEOC and the PHRA did not operate to toll this statutory period. *See Johnson v. Railway Exp. Agency, Inc.,* 421 U.S. 454, 465–6, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

**4.** See n. 2 supra.

**5.** Since Dr. Chatterjee's § 1983 claims have been disposed of as time-barred, it is not necessary to consider the remaining grounds

on which defendants have moved for their dismissal. However, one flaw cannot pass without notice: Dr. Chatterjee has not alleged any facts suggesting that the Federation was acting under color of state law. State action is a threshold requirement of a cause of action under § 1983, *see, e.g., Jackson v. Temple University of Com. System of Higher Educ.,* 721 F.2d 931 (3d Cir.1983), and Dr. Chatterjee's claim against the Federation is insufficient in this regard.

*Bhd. of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

In *DelCostello,* the Supreme Court was faced with just such a "hybrid § 301/fair representation claim" as that presented in this case. *Id.* at 165, 103 S.Ct. 2281. Noting that such a suit has "no close analogy in ordinary state law," the Court determined that it would be subject to the six-month limitations period of § 10(b) of the NLRA, 29 U.S.C. § 160(b). Since many more months than six had elapsed from the last of Dr. Chatterjee's allegations as to either the District or the Federation before he filed his complaint, these claims are time-barred.

**Timeliness of State Tort Law Claims**

Under Pennsylvania law, claims for fraud, intentional infliction of emotional distress, intentional interference with contractual relations, and defamation are subject to a two-year limitations period. 42 Pa.Cons.Stat.Ann. § 5524. Therefore, Dr. Chatterjee's state tort law claims against all defendants are time-barred.

**III. Conclusion**

In an accompanying order, the two instant motions to dismiss are disposed of as follows: (1) the District defendants' motion is denied with respect to plaintiff's claims against the District under Title VII and the PHRA; (2) the District defendants' motion is denied with respect to plaintiff's claim against the District under COBRA; (3) the District defendants' motion to dismiss is granted with respect to all other claims against the District; (4) the District defendants' motion to dismiss is granted with respect to all claims against the employees of the District in their individual capacities; and (5) the Federation defendants' motion to dismiss is granted as to all claims against the Federation and its employees.

**ORDER**

AND NOW, this ___ day of October, 2001, upon consideration of the Motion by defendants the School District of Philadelphia *et al.* to dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), the Motion by defendants the Philadelphia Federation of Teachers *et al.* to dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and plaintiff's responses thereto, and for the reasons stated in the accompanying opinion, it is hereby ORDERED that the motions are GRANTED in part and DENIED in part as follows:

1. The motion by the School District of Philadelphia *et al.* is DENIED as to plaintiff's claims against the District under Title VII of the Civil Rights Act of 1964 and the PHRA;

2. The motion by the School District of Philadelphia *et al.* is DENIED as to plaintiff's claim against the District under the Consolidated Omnibus Budget Reconciliation Act ("COBRA");

3. The motion by the School District of Philadelphia *et al.* is GRANTED as to all other claims against the District, and these claims are hereby DISMISSED;

4. The motion by the School District of Philadelphia *et al.* is GRANTED as to all claims against the employees of the District in their individual capacities, and these claims are hereby DISMISSED;

5. The motion by the Philadelphia Federation of Teachers *et al.* is GRANTED as to all claims against the Federation and its employees, and these claims are hereby DISMISSED.