*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0078p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOSEPH J. SIMON,

　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

PFIZER INCORPORATED,

　　　　　　　　*Defendant-Appellant.*

No. 03-1192

---

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 02-60199—Marianne O. Battani, District Judge.

Argued: June 15, 2004

Decided and Filed: February 18, 2005

Before: SILER and ROGERS, Circuit Judges; FORESTER, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** James P. Flynn, EPSTEIN BECKER & GREEN, Newark, New Jersey, for Appellant. William G. Tishkoff, Ann Arbor, Michigan, for Appellee. **ON BRIEF:** James P. Flynn, EPSTEIN BECKER & GREEN, Newark, New Jersey, for Appellant. William G. Tishkoff, Ann Arbor, Michigan, for Appellee.

---

## OPINION

---

KARL S. FORESTER, Chief District Judge. The Defendant Pfizer, Inc. ("Pfizer") herein appeals the District Court's ruling on its motion to dismiss the claims of Plaintiff Joseph Simon ("Simon").

Pfizer argues that the District Court erred in failing to dismiss Simon's four-count complaint concerning allegedly improper refusal of, and interference with the attainment of, benefits under the Warner-Lambert Company Enhanced Severance Plan ("ESP") because the ESP mandates that such disputes be decided in an arbitral, not judicial, forum and because Simon failed to exhaust internal administrative remedies. We REVERSE, in part, AFFIRM, in part, and REMAND for the reasons set forth in this opinion.

---

[*]The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

# BACKGROUND

Simon was employed by Warner-Lambert Company ("Warner-Lambert") from 1989 until May of 2002. Prior to the merger of Warner-Lambert and Pfizer in May of 2000, Warner-Lambert adopted the ESP, which was designed to protect the job security of its employees in the event of a merger with another company. The ESP provides for the payment of enhanced severance benefits to certain eligible employees under limited circumstances that result in an "Activation Event" within two years of a "Change in Control." This two-year period is sometimes referred to as the "protected period." An "Activation Event" is either a "Constructive Termination" or an actual termination other than for "Just Cause." A "Change of Control" within the meaning of the ESP occurred when Pfizer and Warner-Lambert merged in May of 2000. Under the ESP, "Termination for Just Cause" is defined as "termination for the commission of a wrongful action such as theft of Company property or alcohol or drug abuse." A "Constructive Termination" is defined, in relevant part, in the ESP as a "substantive change in job duties" or "change in reporting relationship" occurring after a change in control. Under the ESP, the Plan Administrator has the authority to interpret the ESP's terms.

Near the end of the protected period, in May of 2002, Simon was terminated for accessing information contained in his manager's computer without authorization. Simon claims that the information accessed consisted of an organizational chart that he reviewed in an attempt to determine whether he was eligible for Constructive Termination benefits based on a change in his reporting relationship under the ESP. Simon further asserts that he was granted access to the area of the corporate network where he viewed this information and that no Pfizer policies or procedures prohibited his conduct.

On July 8, 2002, Simon submitted a request for benefits under the ESP, alleging Constructive Termination based on an alleged change in reporting relationship and Actual Termination other than for Just Cause. By letter dated July 9, 2002, Simon's attorney notified Pfizer that Simon demanded reinstatement to his position at Pfizer because his termination was, allegedly, in retaliation for, and an interference with, Simon's exercise and attainment of his rights under the ESP. J.A. p. 235.

In order for a plan participant to seek severance benefits under the ESP based on Constructive Termination or to contest a Termination for Just Cause, he must submit his claim(s) to the ESP Plan Administrator. The Plan Administrator reviews all claims and renders a determination through a three-step review process. The review process takes place in this order: (1) the participant completes a Constructive Termination form and files it with the Plan Administrator, who, after an internal review, forwards the claim to the ESP Advisory Group; (2) the participant may appeal to the ESP Administrative Committee; and (3) the participant may appeal to the Senior Vice President of Corporate Human Resources. If the participant is not satisfied with the outcome of this three-step review process, the ESP flow chart indicates that arbitration may be initiated. The chart clearly states that a participant "can proceed to arbitration only if [the participant] ha[s] completed the above three steps of the internal ESP process." J.A. p. 101. Pursuant to the ESP, any unsuccessful participant must submit his or her claim(s) to arbitration before the American Arbitration Association ("AAA") regardless of whether they are claims of Actual Termination for Just Cause[1] or Constructive Termination.[2] The results of arbitration are binding on Pfizer (and Warner-Lambert) and on the participant. J.A. p. 101.

Simon commenced this suit in the Eastern District of Michigan on September 24, 2002, prior to resolution of his claims in the three-step administrative process. His complaint contains counts for retaliatory discharge and discrimination in violation of ERISA § 510, codified at 29 U.S.C. § 1140 (Count

---

[1] *See* J.A. p. 52 ("The determination of whether alleged grounds for termination qualify as a Termination for Just Cause shall be made by an Arbitration Panel").

[2] *See* J.A. p. 53 (stating that the term "Constructive Termination" shall include "any other action which shall be determined by an Arbitration Panel to constitute a Constructive Termination").

I),[3] improper denial of plan benefits (Count II), breach of fiduciary duty in violation of 29 U.S.C. § 1132(a)(3) (Count III), and failure to provide timely and proper notice of COBRA benefits pursuant to 29 U.S.C. §§ 1161, 1166 (Count IV).[4] Thereafter, on November 12, 2002, Pfizer filed a motion to dismiss

---

[3]Title 29, Section 1140 of the United States Code, titled "Interference with protected rights," states as follows:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. §§ 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

*Id.*

[4]The notice requirements set forth in 29 U.S.C.§ 1166 provide:

(a) In general

In accordance with regulations prescribed by the Secretary–

(**1**) the group health plan shall provide, at the time of commencement of coverage under the plan, written notice to each covered employee and spouse of the employee (if any) of the rights provided under this subsection,
(**2**) the employer of an employee under a plan must notify the administrator of a qualifying event described in paragraph (1), (2), (4), or (6) of section 1163 of this title within 30 days (or, in the case of a group health plan which is a multiemployer plan, such longer period of time as may be provided in the terms of the plan) of the date of the qualifying event,
(**3**) each covered employee or qualified beneficiary is responsible for notifying the administrator of the occurrence of any qualifying event described in paragraph (3) or (5) of section 1163 of this title within 60 days after the qualifying event and each qualified beneficiary who is determined, under title II or XVI of the Social Security Act [42 U.S.C.A. §§ 401 et seq. or 1381 et seq.], to have been disabled at any time during the first 60 days of continuation coverage under this part is responsible for notifying the plan administrator of such determination within 60 days after the date of the determination and for notifying the plan administrator within 30 days after the date of any final determination under such title or titles that the qualified beneficiary is no longer disabled, and
(**4**) the administrator shall notify--
    (A) in the case of a qualifying event described in paragraph (1), (2), (4), or (6) of section 1163 of this title, any qualified beneficiary with respect to such event, and
    (B) in the case of a qualifying event described in paragraph (3) or (5) of section 1163 of this title where the covered employee notifies the administrator under paragraph (3), any qualified beneficiary with respect to such event, of such beneficiary's rights under this subsection.

(b) Alternative means of compliance with requirements for notification of multiemployer plans by employers

The requirements of subsection (a)(2) of this section shall be considered satisfied in the case of a multiemployer plan in connection with a qualifying event described in paragraph (2) of section 1163 of this title if the plan provides that the determination of the occurrence of such qualifying event will be made by the plan administrator.

(c) Rules relating to notification of qualified beneficiaries by plan administrator

For purposes of subsection (a)(4) of this section, any notification shall be made within 14 days (or, in the case of a group health plan which is a multiemployer plan, such longer period of time as may be provided in the terms of the plan) of the date on which the administrator is notified under paragraph (2) or (3), whichever is applicable, and any such notification to an individual who is a qualified beneficiary as the spouse of the covered employee shall be treated as notification to all other qualified beneficiaries residing with such spouse at the time such notification is made.

all counts of the complaint based on the ESP's mandatory arbitration provisions and on Simon's failure to exhaust his administrative remedies. Alternatively, Pfizer requested that the District Court stay litigation of Simon's claims until the resolution of his claims filed with Pfizer for benefits under the ESP.

At the time of oral argument on Pfizer's motion to dismiss, Simon's administrative claims filed with Pfizer for benefits (for Constructive Termination and Actual Termination under the ESP) were winding through the three-step administrative process established by the ESP. Pfizer represented to the District Court that the ESP Advisory Group informed Simon by letter dated January 23, 2003, of its decision to deny Simon's claim for benefits based on Constructive Termination, thus completing the first level of review. J.A. pp. 441-443; Pfizer's Motion to Supplement the Record, Exhibit 3. Pfizer further represented that it was continuing to follow the internal review procedures with respect to Simon's claim for benefits based on Actual Termination. J.A. pp. 441-443.

The District Court denied Pfizer's motion to dismiss with respect to all but Count III (breach of fiduciary duty). The District Court refused to require exhaustion of administrative remedies as to Simon's ERISA Section 510 (Count I) and COBRA (Count IV) claims on the basis that said claims are statutory and are thus separate and apart from Simon's claim under the ESP. The court ruled that Simon's failure to exhaust his administrative remedies was excused on the basis of futility for Simon's claim for wrongful denial of ESP benefits (Count II) and also held that arbitration was not required.[5] The Court did, however, dismiss Simon's fiduciary duty claim (Count III). Pfizer timely appealed the District Court's ruling, arguing that Simon should be required to both exhaust his administrative remedies and arbitrate his claims.[6]

On February 19, 2003, Simon filed an administrative appeal from the denial of Constructive Termination benefits. Simon then received a March 17, 2003, letter regarding his Actual Termination claim, advising him of the determination of the ESP Advisory Group (the first level of review) that he had been terminated for Just Cause and was therefore ineligible for benefits under the ESP. Thereafter, the Administrative Committee, at the second level of review, again denied Simon's Constructive Termination claim on June 1, 2003. Simon appealed both his Constructive Termination and Actual Termination claims to the final level of review - Robert Norton, Senior Vice President of Corporate Human Resources - on June 27, 2003, attempting to skip the Administrative Committee review (the second level of review) of his Actual Termination claim. *See* Pfizer's Motion to Supplement the Record, Exhibit 1-3.

---

*Id.*

[5]Specifically, the Court stated: "[t]he other issue that remains is, which I think is actually taken off my prior words, but is whether plaintiff's complaint should be dismissed for failure to arbitrate, and the Court finds under the same reasoning [as that applied with respect to exhaustion] that you'd never get to arbitration since there's no response from the company." J.A. p. 448.

[6]Lastly, and in the alternative, Pfizer argues that the District Court erred in refusing to stay the litigation of all claims until such time as the parties conclude their arbitration. Pfizer did not, however, present the District Court with a separate motion to stay proceedings, but rather included the request in a footnote to its brief in support of its motion to dismiss as an alternative remedy to dismissing Simon's claims. *See* J.A. p. 29, Pfizer's Brief in Support of its Motion, n. 3 ("At a minimum, the Court should stay the action pending arbitration of all or any part of these claims"). The District Court did not therefore explicitly make a ruling on this request, and as the court found that neither arbitration nor exhaustion was required with respect to any of Simon's claims, there would have been no reason to grant a stay pending arbitration - no arbitration of claims was being required. J.A. p. 446-448. As further evidence that this is a non-issue, Simon does not even address this argument in his brief. *See* Appellee's Brief. Neither was Pfizer's request to stay considered at a later date. The next motion considered by the Court was on February 19, 2003, when it considered Pfizer's motion for a stay pending appeal. J.A. p. 455. Because the District Court did not reach the question of whether a stay should be required pending arbitration, the issue is not properly before this Court. Based on this Court's ruling herein, however, this question may become pertinent on remand.

# DISCUSSION

**1.      Appellate Jurisdiction**

As an initial matter, we note that this Court has appellate jurisdiction over all "final decisions" of the district courts, 28 U.S.C. § 1291; however, the District Court's partial denial of Pfizer's motion to dismiss is not a "final" order that is appealable under 28 U.S.C. § 1291. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 275 (1988) (In general, an order denying a motion to dismiss is not final because it "ensures that litigation will continue in the District Court.").[7] Notwithstanding, an appeal of such an order may be taken if it falls within the small class of orders that are final for purposes of 28 U.S.C. § 1291 under the "collateral order doctrine" established in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546 (1949) (noting that the collateral order doctrine embraces the "small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated").

An order that does not finally resolve a case fits within the collateral order doctrine if the order: (1) "conclusively determine[s] the disputed question," (2) "resolve[s] an important issue completely separate from the merits of the action," and (3) is "effectively unreviewable on appeal from a final judgment." *Gulfstream Aerospace*, 485 U.S. at 276 (citations omitted). If the order at issue fails to satisfy any one of those requirements, it is not appealable under the collateral order exception. *Id. See Decker v. IHC Hospitals, Inc*., 982 F.2d 433, 435 (10th Cir.1992).

In this case, the District Court based its partial denial of Pfizer's motion to dismiss on two grounds, ruling that Simon was excused from exhausting his administrative remedies on the basis of futility and finding that Simon's claims were not subject to arbitration. Pfizer appeals on both grounds. Because the District Court's ruling on the exhaustion issue is not conclusive with respect to Simon's underlying claims and because it is effectively reviewable on appeal from a final judgment,[8] it does not fit within the collateral order doctrine and thus this Court does not have appellate jurisdiction to review the District Court's ruling on that ground.[9] However, because Pfizer appeals, in part on the District Court's refusal to enforce, through dismissal or stay, an agreement to arbitrate, this Court has independent jurisdiction over that question under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16, and Rule 4 of the Federal Rules of Appellate Procedure.

---

[7]*See also*, *e.g.*, *Suarez Corp. Indus. v. McGraw,* 125 F.3d 222, 225 (4th Cir.1997) ("Ordinarily, appellate jurisdiction is lacking to hear an appeal from an order denying a Rule 12(b)(6) motion to dismiss since such an order is interlocutory in nature"); *Hill v. City of New York,* 45 F.3d 653, 659 (2d Cir.1995) ("a denial of a motion to dismiss is ordinarily considered non-final, and therefore not immediately appealable").

[8]*See Stewart v. Oklahoma,* 292 F.3d 1257, 1260 (10th Cir.2002) (noting that the collateral order doctrine did not apply, preventing the court from reviewing the district court's denial of motion to dismiss on the basis of exhaustion because the third requirement of that doctrine, that the question be effectively *unreviewable* after final judgment, was not met - the "exhaustion claim rests on less urgent questions of statutory interpretation and equitable considerations effectively reviewable after final judgment").

[9]Neither does the doctrine of pendent appellate jurisdiction allow us to consider the issue of exhaustion because that issue is not "coterminous with, or subsumed in" the arbitration issue. *U.S. v. Any and All Radio Station Transmission Equipment,* 204 F.3d 658, 668 (6th Cir.2000). *See also Brennan v. Township of Northville,* 78 F.3d 1152, 1157-58 (6th Cir.1996) (pendent jurisdiction exists "where the appealable and non-appealable issues are 'inextricably intertwined'," meaning "when ... resolution of the collateral appeal *necessarily* resolves the pendent claim as well"); *Chambers v. Ohio Dep't of Human Servs.,* 145 F.3d 793, 797 (6th Cir.1998) ("pendent appellate jurisdiction ... only may be exercised when the appealable issue at hand cannot be resolved without addressing the nonappealable collateral issue").

## 2.        **Arbitration**

District Court decisions on motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are generally subject to a *de novo* standard of review. *See, e.g., Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir.2003); *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511-12 (6th Cir. 2001). The standard of review for a district court's decision regarding whether a dispute is arbitrable is also *de novo*. *Haskins v. Prudential Ins. Co. of Am.,* 230 F.3d 231, 234 (6th Cir.2000).

Pfizer attacks the District Court's ruling regarding the arbitrability of Simon's claims, arguing that his claim for wrongful denial of benefits under the ESP (Count II) is expressly covered by the arbitration provisions of the ESP, and that his statutory claims (Count I, III and IV), while not expressly covered, are sufficiently connected to the claim of wrongful denial of benefits that arbitration should be required.[10] Simon responds that the arbitration agreement contained in the ESP is limited, applying only to disputes concerning Constructive Termination.

In support of this contention, Simon points to language contained in Section 20.3 of the ESP, which provides: "[a]ll disputed [sic] regarding the application of this Section 20 shall be submitted to an Arbitration Panel whose findings shall be binding on the Company and the Participant." J.A. p. 54. Section 20 deals exclusively with Constructive Termination and the meaning and application of that term with respect to benefits eligibility. Simon ignores, however, similar language contained in Section 14 of the ESP, which clearly mandates arbitration with respect to disputes concerning Termination for Just Cause. Section 14 is titled "Termination for Just Cause," and, likewise, states in pertinent part: "[t]he determination of whether alleged grounds for termination qualify as Termination for Just Cause shall be made by an Arbitration Panel." J.A. p. 52. Thus, contrary to Simon's argument, the ESP expressly mandates arbitration for disputes concerning both Constructive Termination and Termination for Just Cause.

The central inquiry, therefore, is whether Simon's claims sufficiently fit within the ESP's arbitration clauses such that arbitration should be required.[11] With respect to Simon's ESP claims, this Court finds that they do and, thus, the District Court's decision denying Pfizer's motion to dismiss with respect to Simon's ESP claims must be overturned - a compulsory arbitration provision divests the District Court of jurisdiction over claims that seek benefits under an ERISA plan, such as the ESP. *See United Steel Workers v. Mead Corp.*, 21 F.3d 128, 132-33 (6th Cir.1994) (refusing to consider the merits of a claim after determining the claim was within the scope of the parties' arbitration agreement).[12]

---

[10]Although the District Court did not give a separate analysis with respect to the question of arbitrability, it appears from what the court did say that it based its ruling on the assumption that Pfizer had not responded to the claims Simon had filed with the company internally, and that, therefore, forcing Simon to arbitrate the claims before the district court would have been futile. The court was concerned that Pfizer had not yet, at the time of the hearing on Pfizer's motion to dismiss, reached a decision at the first level of review on Simon's Actual Termination claim filed internally with the company. After explaining why, based on that fact, exhaustion was futile for Simon's claim of wrongful denial of benefits under the plan, J.A. pp. 446-447, the court stated: "[t]he other issue that remains is, which I think is actually taken off my prior words, but is whether plaintiff's complaint should be dismissed for failure to arbitrate, and the Court finds under the same reasoning [as that applied with respect to exhaustion] that you'd never get to arbitration since there's no response from the company." J.A. p. 448.

[11]*See Toledo Technologies, Inc. v. INA Walzlager Schaeffler*, 1999 WL 681557, *2 (N.D.Ohio 1999) ("In ruling on such a motion, a court must first determine if the parties actually agreed to arbitrate the issue in question.") (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc .,* 473 U.S. 614, 626 (1985); and *AT & T Technologies v. Communications Workers,* 475 U.S. 643, 650 (1986) (noting that with respect to arbitration the parties' intentions control, but that there is an initial presumption of arbitrability)).

[12]The following language from the *Mead* decision is extremely pertinent herein:

> [W]here the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

### A.     Wrongful Denial of Benefits (Count II)

Count II of the complaint alleges that Simon was constructively and involuntarily terminated and that Pfizer wrongly failed to respond to his requests for involuntary and Constructive Termination benefits under the ESP.  J.A. p. 9-10.[13]  To the contrary, Simon's claims filed internally with Pfizer were being addressed,[14] and any disputes regarding the resolution of said claims are clearly governed by the arbitration provisions in the ESP.  As noted above, the ESP contains mandatory arbitration provisions governing all claims for benefits for Constructive Termination or Actual Termination for Just Cause.  It is undisputed that Simon has refused to proceed to arbitration as required with regard to any of these claims.  Under a *de novo* standard of review, and based on policies favoring arbitration,[15] this Court finds that the District Court erred in denying Pfizer's motion to dismiss with respect to Simon's claim for benefits under the ESP (Count II) - the subject matter of this claim must be arbitrated pursuant to the ESP under which Simon claims an entitlement to benefits.

### B.     ERISA Section 510 (Count I) and COBRA Claims (Count IV)

Next, an inquiry must be made with respect to Simon's ERISA Section 510 and COBRA claims.

Simon claims that the information he accessed on his manager's computer without authorization (for which conduct he was terminated) was information pertaining to his eligibility for benefits under the ESP. Simon thus argues that he was terminated for attempting to determine his rights and benefits under the ESP in violation of ERISA Section 510, *see* 29 U.S.C. § 1140, which prohibits employer conduct engaged in for

---

dispute." *See AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648-51, 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation, Co.,* 363 U.S. at 582-83, 80 S.Ct. at 1353 (1960)). Moreover, in cases involving broad arbitration clauses the [U.S. Supreme] Court has found the presumption of arbitrability "particularly applicable," and only an express provision excluding a particular grievance from arbitration or "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf Navigation,* 363 U.S. at 584-85); *see also International Union, UAW v. United Screw & Bolt Corp.,* 941 F.2d 466, 472-73 (6th Cir.1991) (finding that the employer had "not satisfied the requirement for forceful evidence to overcome the presumption that the grievances should be arbitrated").

*United Steelworkers of America v. Mead Corp.*, 21 F.3d at 131.

[13]Simon claims that this alleged improper denial of benefits is in violation of ERISA. 29 U.S.C. § 1132(a)(1)(B) allows a participant or beneficiary to pursue a civil action to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. *Id.*

[14]*See supra,* pp.6 -7.

[15]Consider this excerpt:

The Federal Arbitration Act (FAA) provides for the compulsory arbitration of disputes covered by a valid arbitration agreement. 9 U.S.C.§ 2; *see also Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).  Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms. *United Steelworkers of Am. v. Mead Corp.,* 21 F.3d 128, 131 (6th Cir.1994).

*Eckel v. Equitable Life Assur. Soc. of the U.S.,* 1 F.Supp.2d 687, 688 (E.D.Mich.1998).

the purpose of interfering with an employee's attainment of benefits.  Simon also alleges a COBRA notice violation under 29 U.S.C. §§ 1161, 1166, in that Pfizer was tardy in providing Simon notice of his COBRA rights, elections and benefits.  Simon contends that, because these claims arise under ERISA, they are not within the scope of the ESP arbitration mandate.  Thus, this Court must tangentially consider the narrow issue of whether ERISA preempts arbitration under the FAA.

This narrow issue has not yet been addressed by the Sixth Circuit, *see Eckel v. Equitable Life Assur. Soc. of the U.S.,* 1 F.Supp.2d 687 at 688 (noting that the Sixth Circuit had not yet addressed the issue); however, the majority of courts considering this issue have held that disputes arising under ERISA, including COBRA claims, are subject to arbitration under the FAA.  *See Kramer v. Smith Barney,* 80 F.3d 1080, 1084 (5th Cir.1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1115-16 (3d Cir.1993); *Bird v. Shearson Lehman/American Express, Inc.* 926 F.2d 116, 122 (2d Cir.1991), *cert. denied* 501 U.S. 1251 (1991); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 479 (8th Cir.1988); *Peruvian Connection, Ltd. v. Christian*, 977 F.Supp. 1107, 1111 (D.Kan.1997); *Fabian Fin. Serv. v. Kurt H. Volk, Inc. Profit Sharing Plan*, 768 F.Supp. 728, 733-34 (C.D.Cal.1991); *Southside Internists Group PC Money Purchase Pension Plan v. Janus Capital Corp.*, 741 F.Supp. 1536, 1541-42 (N.D.Ala.1990); *Glover v. Wolf, Webb, Burk & Campbell, Inc.*, 731 F.Supp. 292, 293 (N.D.Ill.1990).[16] Notwithstanding the foregoing, the following discussion reveals why this issue need not be resolved herein.

A longstanding principle of this Circuit is that no matter how strong the federal policy favors arbitration, "arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir.1972).  *See also AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Bratt Enters., Inc., v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir.2003); *Roney & Co. v. Kassab*, 981 F.2d 894,897 (6th Cir.1992). This Court has drawn a clear line between the extensive applicability of general arbitration provisions and the more narrow applicability of arbitration clauses tied to specific disputes.  When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.  *See Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir.2004).  Indeed, in such a case, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators."  *Id*. at 627 (internal quotations and citation omitted).  However, when an arbitration clause by its terms extends only to a specific type of dispute, then a court cannot require arbitration on claims that are not included.  *See Bratts Enters., Inc.*, 338 F.3d at 613.

---

**16**Simon does not argue to the contrary, but merely cites two out-dated cases in which courts did not require arbitration of ERISA claims: *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir.1984), for the proposition that arbitrators lack the necessary competence to deal with ERISA statutory violations, and *McLendon v. Continental Group, Inc.,* 602 F. Supp. 1492 (D.N.J.1985), for the proposition that ERISA claims deal with the enforcement of substantive rights and thus should not be subject to the same arbitration provisions as govern contractual rights between parties. However, *Amaro* was discredited by *Fabian Financial Services v. Kurt Volk, Inc. Profit Sharing Plan,* 768 F. Supp. 728, wherein the court stated:

> Fabian also cites, as did *Graphic Communications, Johnson v. St. Frances Xavier Cabrini Hosp.*, 910 F.2d 594 (9th Cir.1990).  *Johnson,* too, relied on *Amaro* and, in particular, *Amaro*'s expressed distrust of arbitrators' competence to decide ERISA claims.  This rationale for rejection of an arbitration provision appears to contradict express Supreme Court holdings to the contrary.  It is true, however, that the *Amaro* court did not have the benefit of the recent decisions discussed above.  For reasons not obvious, the Ninth Circuit decisions have not addressed the several Supreme Court cases relied upon by the Plan and which this Court finds persuasive and binding.  Thus, in asserting that an arbitrator cannot interpret ERISA, Fabian finds itself in conflict with, for example, *McMahon,* where the Supreme Court stated " 'we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals' should inhibit enforcement of the Act 'in controversies based on statutes.' "

*Id*. at 731-32 (citations omitted).

Passing to the central inquiry, this Court must determine whether the arbitration provisions contained in the ESP herein at issue are broad enough to encompass Simon's ERISA Section 510 and COBRA claims. The ESP *does not* contain a general arbitration provision under which the parties agreed to arbitrate all disputes arising from the employment relationship. The arbitration provisions in the ESP are admittedly narrower and are contained specifically in the sections of the document concerning Constructive Termination and Actual Termination. J.A. pp. 52, 53. In other words, only two types of disputes are subject to arbitration under the ESP - disputes regarding the application of Section 20 dealing with Constructive Termination and disputes concerning the application of Section 14 dealing with Termination for Just Cause. Neither of these ESP sections anywhere refers to ERISA or COBRA, and therefore, as an initial matter, it is clear that Simon's ERISA Section 510 and COBRA claims are not within the scope of any general or specific arbitration provision. Even assuming that Simon's statutory claims arise from the same factual underpinnings as his claim for wrongful denial of benefits under the ESP, it does not necessarily follow that the ERISA claims must also be arbitrated. The question of whether or not Simon's ERISA claims share facts with the arbitrable claims is not necessarily determinative of arbitrability of the ERISA claims.

Where one claim is specifically covered by an arbitration agreement, and a second claim is not, the arbitrability of the second is governed by the extent to which the second claim is substantially identical to the first. On the one hand, a party cannot avoid arbitration simply by renaming its claims so that they appear facially outside the scope of the arbitration agreement. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003). In order to determine whether such renaming has occurred, a court must examine the underlying facts - when an otherwise arbitrable claim has simply been renamed or recast it will share the same factual basis as the arbitrable claim. However, a claim that is truly outside of an arbitration agreement likewise cannot be forced into arbitration, even though there may be factual allegations in common. In particular, the determination that a claim "require[s] reference" to an arbitrable issue or factual dispute is not determinative. *Bratt Enters., Inc.*, 338 F.3d at 613.

*Bratt Enterprises* is particularly instructive as to how much factual overlap there may be without requiring arbitration of disputes not expressly subject to arbitration. In *Bratt Enterprises*, the arbitration clause covered disagreements relating to "any of the amounts included in the Closing Balance Sheet" of an asset purchase agreement transaction. *Id*. at 612-13. The parties ultimately had numerous disputes, and in a lawsuit filed by Bratt Enterprises, the Defendant Noble International, Inc. counterclaimed for breach of contract. Part of the breach of contract claim centered around a provision under which Bratt Enterprises retained accounts payable in excess of $1.2 million. Noble International's closing balance sheet reflected accounts payable of over $1.8 million, but despite the $1.2 million limit, Bratt Enterprises disputed and sought to avoid payment of the $.6 million difference back to Noble. Because the breach of contract claim by Noble was therefore related to a balance sheet dispute, the district court ordered arbitration on the breach of contract claim in addition to the dispute over the actual accounts payable balance. *Id*. at 611-13.

This Court reversed, holding that

> [w]hile Noble's claim would obviously require reference to the closing balance sheet to determine matters of valuation should Noble prevail on this issue, the dispute regarding the validity of the [$1.2 million] limitation provision does not itself involve a "disagree[ment] with any of the amounts included in the Closing Balance Sheet." . . .Thus, this aspect of Noble's breach of contract claim is not within the scope of the arbitration clause and is, therefore, not arbitrable.

*Id*. at 613. Nor was this result altered by the fact that ordering arbitration on the dispute over the proper amount of accounts payable and refusing to order arbitration on the breach of contract claim resulted in "piecemeal litigation." *Id*. at 613.

As noted above, although Simon's claims are intermingled, this does not support the conclusion that arbitration is necessarily required. Even if Simon were terminated for Just Cause, he would not necessarily be ineligible for COBRA benefits. Although it is true that COBRA expressly excludes termination for "gross misconduct" from the list of qualifying events, it does not follow that a termination for Just Cause under the ESP would necessarily be a termination for gross misconduct. Section 14 of the ESP states that: "'Termination for Just Cause' shall mean termination for the commission of a wrongful act such as theft of Company property or alcohol or drug abuse." J.A. p. 52. This is not synonymous with the definition of gross misconduct, and different courts apply different standards. *See*, *e.g.*, *Chatterjee v. School Dist. of Philadelphia*, 170 F.Supp.2d 509, 518 (E.D.Pa. 2001) (recognizing that there is no definition of "gross misconduct"). Therefore, it is possible that the arbitrator could decide that Simon had been terminated for just cause, while, in litigation, a court could determine that Simon had not been terminated for gross misconduct and was, therefore, eligible for COBRA notification and benefits.

Returning to the question of whether arbitration is required because of the remaining degree of factual overlap, this case is sufficiently analogous to *Bratt Enterprises* so that the same result should be reached. Simon's ERISA Section 510 and COBRA claims require consideration of some factual issues that are subject to arbitration, but the claims have independent legal bases. The Section 510 claim and COBRA claim are not simply claims for violations of the ESP that have been recharacterized in order to avoid arbitration; rather, they are independent claims that are statutorily authorized and that depend upon different legal standards. As discussed above, Simon's COBRA claim could be resolved in his favor even if he loses the arbitration regarding his ESP claims. In other words, there is no greater degree of issue overlap than was the case in *Bratt*. In *Bratt*, the actual amount of the accounts payable could have controlled the entire breach of contract dispute had the arbitrator determined that the amount was equal to the $1.2 million cap and not in excess of it. The amount of recovery that Noble International would be entitled to if it prevailed depended upon the figure the arbitrator assigned to the accounts payable. In this case, as in *Bratt*, it is appropriate to permit litigation of the independent claims even though they may require some reference to the decision reached by the arbitrator. Only the desire to avoid piecemeal litigation counsels in favor of requiring arbitration, and that desire is legally insufficient under *Bratt*.

Therefore, because Simon's ERISA Section 510 and COBRA claims are not covered by the arbitration clauses at issue, it is not necessary to address the question of whether ERISA would pre-empt an arbitration clause that did cover those claims. Thus, based on the *de novo* standard of review, this Court finds that Simon's ERISA and COBRA claims (Counts I and IV) are not subject to arbitration in this case and, therefore, the District Court did not err in failing to require arbitration with respect to those claims.

## CONCLUSION

For the foregoing reasons, this Court **REVERSES** the District Court with respect to denying Pfizer's motion to dismiss Simon's claim for benefits under the ESP, **AFFIRMS** the District Court's decision regarding the arbitrability of Simon's Section 510 and Cobra claims, and **REMANDS** for proceedings not inconsistent with this opinion.