*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0029p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NCR CORPORATION,

        *Plaintiff-Appellant,*

    *v.*

No. 06-3685

KORALA ASSOCIATES LTD.,

        *Defendant-Appellee.*

>

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 04-00407—Michael R. Merz, Magistrate Judge.

Argued: February 1, 2007

Decided and Filed: January 16, 2008

Before: KENNEDY, BATCHELDER, and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Paul R. Gupta, ORRICK, HERRINGTON & SUTCLIFFE, New York, New York, for Appellant. Paul M. Fakler, MOSES & SINGER, New York, New York, for Appellee. **ON BRIEF:** Paul R. Gupta, ORRICK, HERRINGTON & SUTCLIFFE, New York, New York, John D. Luken, Joshua A. Lorentz, DINSMORE & SHOHL, Cincinnati, Ohio, Clifford R. Michel, MAYER BROWN, New York, New York, for Appellant. Paul M. Fakler, MOSES & SINGER, New York, New York, William F. Patry, THELEN, REID & PRIEST, New York, New York, for Appellee.

---

## OPINION

---

    ALICE M. BATCHELDER, Circuit Judge. Plaintiff NCR Corporation ("NCR") appeals the order of the district court[1] compelling NCR and defendant Korala Associates Ltd. ("KAL") to arbitrate NCR's claims against KAL, pursuant to 9 U.S.C. § 206[2], part of Chapter 2 of the Federal Arbitration Act, *see* 9 U.S.C. § 201, *et seq*., which implements the United Nations Convention on

---

[1] The parties agreed to allow a United State Magistrate Judge to conduct any and all proceedings in this matter and enter the order of judgment, in accordance with 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure.

[2] Section 206 applies in this action because KAL is a foreign corporation, organized under the laws of the United Kingdom and located in Scotland.

1

the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38.

## I. BACKGROUND

NCR is one of the largest providers of Automatic Teller Machines ("ATM") equipment, integrated hardware and software systems, and related maintenance and support services in the world. NCR's ATMs use either the Windows operating system or the OS/2 operating system. NCR installs its APTRA XFS software ("APTRA XFS") on those ATMs using the Windows operating system and its S4i software ("S4i") on those ATMs using the OS/2 operating system. NCR owns a registered copyright for its APTRA XFS software and had applied, on an expedited basis, to register a copyright for APTRA XFS's precursor software. NCR had also applied, on an expedited basis, to register copyrights for two versions of the S4i software.

Over 300,000 NCR ATMs are installed world-wide, and at the time NCR filed its Amended Complaint, approximately 150,000 of these ATMs required the installation of an upgraded software system so that the machines would be Triple-DES[3] compliant. NCR has developed a Triple-DES system upgrade to install on its ATMs. KAL, likewise, has developed a Triple-DES system upgrade, which can be installed on NCR ATMs. NCR asserts that KAL could not have developed its NCR-compatible system upgrade without illegally copying and analyzing NCR's APTRA XFS and S4i software.

On December 15, 1998, KAL and NCR entered into a Software License Agreement ("1998 Agreement") in which KAL agreed to develop and license to NCR three specific software components for NCR's ATMs — Device Controls, Self Service Controls, and Service Providers — which together form software known as Kalypso. KAL also agreed to "develop additional elements of Kalypso from time to time" under the terms of the Agreement. In order to facilitate KAL's development of NCR-friendly software, "NCR agreed to loan to KAL certain computer hardware and/or software items that were necessary to enable KAL to adapt and support the Kalypso Components." To that end, NCR loaned to KAL an NCR ATM which contained NCR's copyrighted APTRA XFS software.

In addition to this particular ATM, NCR alleged that KAL obtained and accessed other NCR ATMs on which APTRA XFS or S4i was installed from NCR bank licensees or from dealers of used or refurbished NCR ATMs. Any software still installed on these ATMs could not have been operated without authorization from NCR.

NCR alleged that KAL, without permission, "obtained access to, made unauthorized use of, and engaged in unauthorized copying" of the APTRA XFS and/or S4i software on NCR ATMs, including the ATM loaned to KAL. According to NCR, by unlawfully accessing and copying the APTRA XFS and S4i software, KAL was able to develop its Triple-DES upgrade — Kalignite Upgrade Solutions — which can be installed on NCR ATMs.

In 2004, NCR brought suit against KAL seeking damages and injunctive relief. In Counts I and II of its Amended Complaint, NCR alleged KAL's direct copyright infringement of NCR's APTRA XFS and S4i software. In Counts III and IV, NCR alleged KAL's contributory copyright infringement of the APTRA XFS and S4i software, asserting that KAL induced NCR licensees to breach confidentiality restrictions contained within NCR's licensing agreements by providing KAL access to the APTRA XFS and S4i software. In Count V, NCR alleged KAL's tortious interference with contract, asserting that KAL acted intentionally to induce NCR licensees to breach the confidentiality restrictions contained within NCR's licensing agreements by providing KAL access

---

[3]Triple-DES is an encryption standard designed to make ATM transactions more secure.

to the APTRA XFS and S4i software.  In Count VI, NCR alleged that KAL illegally imported the infringing Kalignite Upgrade Solutions into the United States.  And in Count VII, NCR alleged that KAL engaged in unethical business practices or common law unfair competition.

KAL moved to (1) dismiss NCR's Amended Complaint under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, (2) to compel the arbitration of all of NCR's claims pursuant to 9 U.S.C. § 206 and in compliance with the arbitration clause contained within the 1998 Agreement, and (3) to dismiss the matter under the doctrine of *forum non conveniens*.  The district court first denied KAL's motion to dismiss under Rule 12(b)(1), finding that it had subject matter jurisdiction under both diversity and federal question jurisdiction.  But the district court granted KAL's motion to compel arbitration and dismissed NCR's complaint without prejudice.  The court did not address KAL's motion to dismiss under Rule 12(b)(6) or on the basis of *forum non conveniens*.  NCR timely appealed the order compelling arbitration.

## II.  ANALYSIS

We review *de novo* a district court's decision regarding the arbitrability of a particular dispute.  *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 385 (6th Cir. 2005).  "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."  *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

The arbitration clause contained within the 1998 Agreement provides that:

> 22.2  Any controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled by arbitration and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  The arbitrator shall be appointed upon the mutual agreement of both parties failing which both parties will agree to be subject to any arbitrator that shall be chosen by the President of the Law Society.

The parties do not dispute that a valid agreement to arbitrate exists; rather the issue of contention is whether NCR's claims fall within the substantive scope of the agreement.

"As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  Despite this strong presumption in favor of arbitration, "arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration."  *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (quoting *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)).

> When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.  Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

*Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 482 n.10 (6th Cir. 2006) (internal punctuation and citations omitted).

Here the parties dispute not only the scope of the arbitration clause, but the standard by which to determine whether a particular claim is arbitrable. The district court, relying on language contained within *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003), concluded that the arbitration clause's language — "any controversy or claim arising out of or relating to this contract" — "encompasses all claims which *touch upon matters* covered by the agreement." (emphasis added). The court held that every allegation in NCR's Amended Complaint "relates to some part of the Agreement and will require examination and interpretation of the Agreement or an exhibit to the Agreement."

NCR argues that it was legal error for the court to apply the "touches upon matters" standard, while KAL argues that "touches upon matters" is the proper standard for this Circuit. We agree with NCR. While the *Fazio* court stated that "[e]ven real torts can be covered by arbitration clauses 'if the allegations underlying the claims "touch matters" covered by the [agreement],'" 340 F.3d at 395 (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)), that court did not apply this standard to determine if the plaintiff's claims fell within the scope of the arbitration clause. Instead, the standard the court enunciated and applied was whether "an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Id.* at 395.

The Supreme Court has also referenced this "touch matters" language. In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), the Court stated that " insofar as the allegations underlying the statutory claims *touch matters* covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability." 473 U.S. at 625 n.13 (emphasis added). This Court, however, has explained that the "touch matters" language in *Mitsubishi Motors* should be considered in light of its narrow context:

> The issue the *Mitsubishi* Court addressed was whether the arbitration clause "should be read narrowly to exclude the statutory claims," *id.*, which were part of the respondent's counterclaim and included claims under the antitrust laws. *Id.* at 619-20. The "enumerated articles" were provisions of a distribution agreement to which the arbitration provision specifically referred. *Id.* at 617. [Defendant], in its brief, apparently treats the Court's statement as announcing the standard that a controversy is arbitrable if it "touches matters covered by" the arbitration clause. [Defendant] reads this passing comment out of context, and we do not believe the words have the broad impact [Defendant] would give them.

*Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 411 F.3d 669, 673 (6th Cir. 2005). And more recently, we reiterated the standard we apply to determine whether a particular claim or dispute falls within the scope of an arbitration agreement: "if an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement — along with the presumption in favor of arbitrability and the intent of the parties." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007) (citing *Fazio*, 340 F.3d at 395).

Under this Court's precedent, the following standard emerges for determining which of NCR's claims must be resolved in arbitration: while we must bear in mind the presumption of arbitrability, the cornerstone of our inquiry rests upon whether we can resolve the instant case without reference to the agreement containing the arbitration clause. *See Nestle Waters*, 505 F.3d at 505. If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise. *Id.* We now apply this standard to NCR's claims.

## A.  Copyright Infringement

"Liability for direct [copyright] infringement arises from the violation of any one of the exclusive rights of a copyright owner.  The owner of copyright . . . has the exclusive right to, and to authorize others to, reproduce, distribute, perform, display, and prepare derivative works from the copyrighted [work]." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) (internal citations omitted).  "To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003).  But "where there is no direct evidence of copying, a plaintiff may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant[] and (2) a substantial similarity between the two works at issue.'" *Id*. at 853-54 (quoting *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999)).

### 1.  APTRA XFS (Count I)

NCR could not maintain a copyright infringement claim against KAL without referencing the 1998 Agreement.  While a court would not need to reference the 1998 Agreement to determine if NCR owns a copyright for APTRA XFS, a court would need to reference the Agreement to determine what, if any, authorization NCR provided to KAL with respect to the APTRA XFS software contained on the ATM that NCR loaned to KAL under the 1998 Agreement.  In its Amended Complaint, NCR alleged that "in each such instance [of operating and accessing APTRA XFS software on an NCR ATM], KAL's copying [of the software] was not licensed or otherwise authorized by NCR or any other party."  To determine whether KAL lawfully copied APTRA XFS, by for instance obtaining a license or NCR's authorization, a court must examine and possibly construe or interpret the terms of the 1998 Agreement and its exhibits.

NCR argues that in its Amended Complaint it also alleged that KAL had access to the APTRA XFS software through NCR's licensees and refurbished ATMs, matters whose resolution would not require examination of the 1998 Agreement.  Enforcement of the arbitration agreement here might, NCR argues, result in piecemeal litigation.  *See*, *e.g.*, *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003).  We do not believe, however, that we must parse out NCR's claims in such detail.  It is sufficient that a court would have to reference the 1998 Agreement for part of NCR's direct infringement claim.  Under these circumstances, we find that the copyright infringement claim as to APTRA XFS falls within the scope of the arbitration agreement.

### 2.  S4i (Count II)

We reach a different conclusion, however, with respect to NCR's claim that KAL directly infringed the S4i software copyright.  No reference to the 1998 Agreement is necessary to determine whether (1) NCR owns a copyright in the S4i software or (2) KAL was licensed or authorized to access and/or copy the S4i software.  While the 1998 Agreement is not limited to KAL's developing software only for ATMs running APTRA XFS software, neither the Agreement itself nor the circumstances surrounding its implementation implicate the S4i software.

KAL argues that any claim relating to the S4i software is in fact arbitrable.  KAL points to several items in the Amended Complaint to support its argument.  First, NCR agreed that KAL would develop and license components of its Kalypso software for all of NCR's ATMs — not just those containing APTRA XFS software.  Second, NCR agreed to loan KAL computer hardware and/or software items that were necessary to enable KAL to adapt and support the Kalypso Components, and the Agreement does not limit the loaned equipment to just those ATMs containing APTRA XFS software.  Third, NCR does not allege that KAL engaged in any different course of conduct in order to infringe NCR's copyright in the S4i software.  Fourth, KAL points out that NCR alleged that "KAL engaged in unauthorized copying of the APTRA XFS *and/or S4i software* when

KAL operated NCR ATMs (*whether obtained from NCR pursuant to the Agreement*, from an NCR licensee, or from a second-hand ATM dealer)." (emphasis added).

In contrast to the APTRA XFS software, however, the S4i software has no obvious link to the 1998 Agreement and finding such a link would require us to draw too many inferences that are simply not warranted. We, therefore, conclude that the parties' 1998 Agreement did not contemplate arbitrating disputes relating to the S4i software.

KAL next argues that even if the S4i software was not installed on the ATM that NCR loaned to KAL under the 1998 Agreement, the claims are closely related and we should therefore compel NCR to arbitrate the S4i claims as well. In *Simon v. Pfizer Inc.*, 398 F.3d 765 (6th Cir. 2005), we determined that:

> [w]here one claim is specifically covered by an arbitration agreement, and a second claim is not, the arbitrability of the second is governed by the extent to which the second claim is substantially identical to the first. On the one hand, a party cannot avoid arbitration simply by renaming its claims so that they appear facially outside the scope of the arbitration agreement. In order to determine whether such renaming has occurred, a court must examine the underlying facts — when an otherwise arbitrable claim has simply been renamed or recast it will share the same factual basis as the arbitrable claim. However, a claim that is truly outside of an arbitration agreement likewise cannot be forced into arbitration, even though there may be factual allegations in common. In particular, the determination that a claim requires reference to an arbitrable issue or factual dispute is not determinative.

398 F.3d at 776 (internal punctuation and citations omitted). We conclude that while the APTRAS XFS and S4i claims are similar, the claims are not identical. NCR's claims relating to S4i are "truly outside" the arbitration clause even though there are factual allegations common to both types of software.

## B. Contributory Copyright Infringement

> Liability for contributory infringement derives from the defendant's relationship to the direct infringement. Contributory infringement occurs when one, *with knowledge of the infringing activity*, induces, causes, or materially contributes to the *infringing conduct of another.*

*Bridgeport Music, Inc. v. WB Music Corp.*, — F.3d — , 2007 U.S. App. LEXIS 26875, at *13 (6th Cir. 2007) (internal punctuation and citations omitted) (emphasis added). That is, "a plaintiff must allege: (1) direct copyright infringement [by] a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) [defendant's] material contribution to the infringement." *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007). And "[w]ith respect to the element of knowledge, contributory liability requires that the secondary infringer 'know or have reason to know' of the direct infringement." *Encore Entm't v. KIDdesigns, Inc.*, 2005 U.S. Dist. LEXIS 44386, *49 (M.D. Tenn. Sept. 14, 2005) (quoting *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001)). "Secondary liability may be imposed on a defendant who does nothing more than encourage or induce another to engage in copyright infringement," *Warner Bros. Entertainment, Inc. v. Ideal World Direct*, 2007 U.S. Dist. LEXIS 71013, *12 (S.D.N.Y. Sept. 26, 2007), because secondary liability is predicated on "the common law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (internal punctuation and citation omitted).

### 1. APTRA XFS (Count III)

NCR could maintain a contributory copyright infringement claim without referencing the 1998 Agreement. To maintain this claim, NCR must establish that its licensees infringed its copyright in the APTRA XFS software when they provided KAL access to the software. NCR must also establish KAL's knowledge of the licensee's infringing activity and KAL's material contribution to the licensees' infringement.

In its Amended Complaint, NCR asserted that its licensing agreements "contain restrictions prohibiting third-party access to the licensed ATMs as well as the software that is resident on that ATM" and that "KAL was aware of such license agreements, as well as the third-party restrictions contained therein." NCR also alleged that because KAL had entered into the 1998 Agreement, "which contained strict provisions on confidentiality restrictions and authorized use, KAL was well aware of the confidentiality restrictions and use limitations employed by NCR with respect to its ATM system software. Thus, KAL knew or should have known that no NCR licensee could authorize KAL to use the APTRA XFS or S4i software installed on an NCR bank ATM, especially not for the purpose of developing a system software upgrade to directly compete with that of NCR."

Taking these allegations together, KAL argues that NCR's contributory infringement claim is "based upon KAL's alleged knowledge of third-party use restrictions, which NCR specifically alleges KAL obtained through the [1998] Agreement," and, therefore, a court must reference the 1998 Agreement in order to determine the merits of this claim. We disagree. At best, NCR's Amended Complaint alleges that KAL was likely on notice of the confidentiality and use restrictions contained within NCR's licensing agreements because of similar provisions contained within the 1998 Agreement. And while KAL's knowledge of the confidentiality provisions within the 1998 Agreement may implicate what KAL "would have reason to know" about the contents of the licensees' agreements, we nevertheless conclude that NCR could maintain this claim without referencing the 1998 Agreement. First, while the 1998 Agreement may be implicated here, a court would not need to examine, construe or interpret the terms of the 1998 Agreement — as it likely would for the direct infringement claim — to determine whether KAL had knowledge of the licensees' infringing activity. Rather, a court could determine that KAL was aware of the alleged infringing activity by referencing some other source of knowledge. Second, a court would not need to reference the 1998 Agreement to determine whether KAL materially contributed to the licensees' infringement. Under the circumstances here, we cannot conclude that NCR agreed to arbitrate this claim. This claim is therefore not arbitrable.

### 2. S4i (Count IV)

For the same reasons that the contributory copyright infringement claim with regard to the APTRA XFS software is not arbitrable, this claim is not arbitrable.

## C. Tortious Interference with Contract (Count V)

To establish tortious interference with contract, NCR must show "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999).

NCR alleged that KAL was aware that NCR's licensing agreements "contain restrictions prohibiting third-party access to the licensed ATM as well as the software that is resident on that ATM" and that "notwithstanding such knowledge, KAL acted intentionally to induce NCR licensees to breach said confidentiality restrictions by providing KAL access to the licensed ATMs, as well as the APTRA XFS and S4i software, and other software resident thereon."

KAL argues that NCR could not maintain this claim without reference to the 1998 Agreement because KAL's knowledge of the licensing agreements and their terms comes from its knowledge of the confidentiality and use restrictions contained within the 1998 Agreement. We disagree. NCR would not need to reference the 1998 Agreement to establish the elements of this cause of action, that is, that a particular licensee had a licensing agreement with NCR, that KAL knew of the existence of that agreement, that KAL acted to procure the breach of that agreement, whether KAL was justified in its actions, and the damages arising from the breach by the licensee. Because NCR can establish the elements of this cause of action without referencing the 1998 Agreement, this claim is not arbitrable.

### D. Illegal Importation of Infringing Copies (Count VI)

NCR asserts that KAL developed its Kalignite Upgrade Solutions by infringing NCR's copyrights in APTRA XFS and S4i and then imported Kalignite Upgrade Solutions, the infringing product, into the United States.

#### 1. APTRA XFS (Count VI in part)

Because this claim turns on whether KAL is liable for infringing NCR's copyright in the APTRA XFS software, this claim is arbitrable for the same reasons that NCR's direct infringement claim is arbitrable.

#### 2. S4i (Count VI in part)

Because the issue of whether KAL infringed a copyright in the S4i software is dispositive of this claim, this claim is not arbitrable for the same reasons that NCR's direct infringement claim is not arbitrable.

### E. Common Law Unfair Competition (Count VII)

Lastly, NCR alleges that KAL is liable for common law unfair competition because KAL has engaged in unethical business practices. "Unfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his or her goods are those of another. It may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." *Landskroner v. Landskroner*, 797 N.E.2d 1002, 1017 (Ohio Ct. App. 2003) (internal punctuation and citations omitted).

"[W]hen an otherwise arbitrable claim has simply been renamed or recast it will share the same factual basis as the arbitrable claim." *Simon*, 398 F.3d at 776. While NCR styles its seventh count against KAL as a "common law unfair competition claim," the language of the Amended Complaint makes clear that NCR is merely asserting claims arising under its agreement with KAL through a common law rubric. For instance, NCR alleges, in part, that KAL "disregard[ed] confidentiality provisions in its own Agreement with NCR" and "misappropriat[ed] trade secrets and other proprietary information of NCR." These allegations relate directly to the confidentiality provisions and Mutual Non-Disclosure Agreement incorporated into the 1998 Agreement, and their resolution will require a court to examine and interpret the terms of the 1998 Agreement. We therefore conclude that the claim is arbitrable.

## III.  CONCLUSION[4]

For the foregoing reasons, we **AFFIRM** the judgment of the district court as to NCR's claims relating to the direct infringement of the APTRA XFS software (Counts I and VI insofar as Count VI relates to APTRA XFS) and the claim of common law unfair competition (Count VII). NCR must arbitrate these claims.  We **REVERSE** and **REMAND** for further proceedings not inconsistent with this opinion as to all of NCR's claims relating to the S4i software (Counts II, IV, and VI insofar as Count VI relates to S4i), the contributory infringement claim relating to the APTRA XFS software (Count III), and the claim of tortious interference (Count V).  NCR may pursue these claims in federal court.

---

[4]Although the parties on appeal presented argument as to Rule 12(b)(6) and *forum non conveniens*, we decline to reach the merits of these issues for the first time on appeal.