RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0262P (6th Cir.)
File Name: 03a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BRATT ENTERPRISES,
INCORPORATED,
    *Plaintiff-Appellant,*

*v.*

NOBLE INTERNATIONAL LTD.;
SET ENTERPRISES INC.,
    *Defendants-Appellees.*

No. 01-4244

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00543—S. Arthur Spiegel, District Judge.

Argued: March 13, 2003

Decided and Filed: July 31, 2003

Before: CLAY and ROGERS, Circuit Judges; COFFMAN,
District Judge.[*]

_____

[*] The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

_____

## COUNSEL

**ARGUED:** John B. Pinney, GRAYDON, HEAD & RITCHEY, Cincinnati, Ohio, for Appellant. Robin E. Harvey, BAKER & HOSTETLER, Cincinnati, Ohio, for Appellees. **ON BRIEF:** John B. Pinney, GRAYDON, HEAD & RITCHEY, Cincinnati, Ohio, for Appellant. Robin E. Harvey, BAKER & HOSTETLER, Cincinnati, Ohio, for Appellees.

ROGERS, J., delivered the opinion of the court, in which COFFMAN, D. J., joined. CLAY, J. (pp. 9-12), delivered a separate dissenting opinion.

_____

## OPINION

_____

ROGERS, Circuit Judge. Noble International Ltd. ("Noble") asserted a breach of contract claim against Bratt Enterprises, Inc. ("Bratt") in connection with Noble's purchase of Bratt's steel processing business. The district court ordered the parties to arbitrate "any and all disputes related to" the claim based upon an arbitration provision contained in the parties' agreement. We conclude that the district court erred by compelling the arbitration of an issue that the parties had not agreed to arbitrate.

### FACTS

On September 30, 1998, Bratt[1] sold its steel processing business to Noble[2] under an asset purchase agreement. Noble agreed to purchase most of the business's assets and agreed to assume most of the business's liabilities, including its accounts payable. One provision of the agreement, however, provided that Bratt would retain all accounts payable in excess of $1.2 million, effectively capping Noble's liability for the accounts payable.

This assumption of liability was only one portion of the purchase price, which included other forms of consideration. Given the fluid values associated with some elements of the purchase price, including the business's accounts payable, the parties agreed to a post-closing adjustment of the purchase price, so that the price would more accurately reflect closing-day values. Under the parties' agreed method of adjustment, the elements would be valued as of the closing day, with the valuations being reflected on a balance sheet, and adjustments would be made based on the balance sheet values. The agreement also provided that, in the event a dispute arose with

---

[1] At the time of the transaction, Bratt was known as H&H Steel Processing Company, Inc. The company assumed its current name after the H&H Steel Processing Company, Inc. name was sold during the transaction in question.

[2] SET Enterprises, Inc., the other named appellee, is a wholly-owned subsidiary of Noble International Ltd. that was formed by a merger involving H&H Steel Processing, Inc. H&H Steel Processing, Inc. was formerly known as Utilase Blank Welding Technologies, Inc., which was the purchaser of the steel business. Noble International Ltd. was the guarantor of Utilase Blank Welding Technologies, Inc. under the agreement. For ease of use, we refer collectively to Set Enterprises, Inc. and Noble International Ltd. as "Noble," given the identity of their interests in this appeal.

regard to any amount reflected on the balance sheet, the parties would arbitrate the dispute.[3]

---

[3] Specifically the agreement, in pertinent part, reads:

The Basic Purchase Price set forth in [the previous section] will be subject to adjustment after the Closing Date (as hereinafter defined) as follows:

(i)   [Noble] will prepare and deliver to [Bratt] within sixty (60) days following the Closing Date (or as soon thereafter as practicable) a balance sheet for [Bratt] as of the opening of business on the Closing Date (the "*Closing Balance Sheet*"). The Closing Balance Sheet will be used to determine the amount of Assumed Liabilities as well as any adjustments pursuant to [certain portions of this agreement] as of the Closing, for purposes of determining the final Basic Purchase Price (the "*Final Basic Purchase Price*").

(ii)  The Closing Balance Sheet will be prepared in accordance with GAAP (as defined herein). . . .

(iii) Within 30 days after the delivery of the Closing Balance Sheet, [Bratt] will notify [Noble] as to whether it disagrees with any of the amounts included in the Closing Balance Sheet. If such notice is not given, the Closing Balance Sheet will be final and conclusive for all purposes. If the parties are unable to resolve their differences within 60 days of their receipt of the Closing Balance Sheet, [Noble] and [Bratt] agree to retain a national accounting firm, other than the independent auditors used by Noble or [Bratt], to arbitrate the dispute and render a decision within 30 days of such retention, which decision will be final and binding for all purposes. Any award pursuant to this Section 1.3(c)(iii) may be entered in and enforced by any court having jurisdiction over the matter. [Noble] and [Bratt] will each pay one-half of the costs of the services rendered by said accounting firm.

Asset Purchase Agreement, J.A. at 160-61.

After Noble submitted the closing balance sheet, along with its proposed adjustments, numerous disputes arose between Noble and Bratt. Unable to resolve these disputes, Bratt filed a complaint in the district court below. Noble filed its answer and a four-count counterclaim. The parties have settled all disputes between them except the first count of Noble's counterclaim, which is the focus of this appeal.

The first count of Noble's counterclaim asserted a breach of contract claim in which Noble sought to recover the difference between the accounts payable balance, over $1.8 million as reflected on the closing balance sheet, and the $1.2 million limit of its liability. Noble simultaneously moved the district court to compel arbitration of this claim. Bratt opposed submitting this counterclaim to arbitration. Bratt argued that the $1.2 million cap was a result of a mutual mistake and that the contract should accordingly be reformed before any disputes regarding the account amounts could be submitted to arbitration. The district court granted Noble's motion to compel arbitration, concluding that the claim "relate[d] to adjustments to the Closing Balance Sheet." In accordance with the lower court's order, the parties proceeded to arbitrate, and the arbitrator ruled in Noble's favor on the breach of contract claim. Bratt then filed a motion for reconsideration of the order compelling arbitration, which the district court denied. The district court then entered a judgment reflecting the arbitrator's decision. Bratt now appeals, asserting that the district court erred by compelling arbitration of all disputes related to Noble's breach of contract claim.

## STANDARD OF REVIEW

We review *de novo* a district court's decision to compel arbitration under the Federal Arbitration Act. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

## ANALYSIS

"Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624 (6th Cir. 2003) (citing *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986)). The district court properly concluded that a valid agreement to arbitrate existed between Bratt and Noble, but erred in concluding that all aspects of Noble's breach of contract claim fell within the scope of that agreement.

The duty to arbitrate a dispute derives from the parties' agreement and a party cannot be required to submit to arbitration any dispute that the party has not agreed to so submit. *Roney & Co. v. Kassab*, 981 F.2d 894, 897 (6th Cir. 1992) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989); *AT&T Techs.*, 475 U.S. at 648-49; *Wiepking v. Prudential-Bache Sec., Inc.*, 940 F.2d 996, 998 (6th Cir. 1991)). The parties' agreement to arbitrate in this case reads, in pertinent part:

> [Bratt] will notify [Noble] as to whether it *disagrees with any of the amounts included in the Closing Balance Sheet*. . . . If the parties are unable to resolve their *differences* within 60 days of their receipt of the Closing Balance Sheet, [Noble] and [Bratt] agree to retain a national accounting firm . . . to arbitrate *the dispute* and render a decision within 30 days of such retention, which decision will be final and binding for all purposes.

Asset Purchase Agreement, J.A. at 160-61 (emphasis added). The plain language of this section demonstrates that the parties agreed to submit disagreements regarding "any of the amounts included in the Closing Balance Sheet" to arbitration, as that phrase is the only referent to which "the dispute" could apply. Based upon this language, the district

court ordered the parties to arbitrate "any and all disputes related to Counterclaim[] I."

That order, however, goes beyond the extent of the disputes that the parties agreed to submit to arbitration. It is true that the parties disagreed about the valuation of accounts payable on the closing balance sheet. The district court correctly compelled the arbitration of that issue, which was resolved through arbitration. As determined by the arbitrator, the closing-day value of the accounts receivables was $1,826,694, or $632,238 in excess of the $1.2 million limit. This value, pursuant to the parties' agreement, is final and binding upon Bratt and Noble for all purposes.

The valuation dispute, however, is only one dispute involved in Noble's breach of contract claim. The other dispute revolves around the validity of the $1.2 million limitation provision. Noble contends that the limitation provision was agreed upon by the parties and that it is entitled to recover based upon Bratt's breach of that provision. Bratt, however, contends that the parties agreed upon the $1.2 million liability limit based upon a common or mutual mistake. While Noble's claim would obviously require reference to the closing balance sheet to determine matters of valuation should Noble prevail on this issue, the dispute regarding the validity of the limitation provision does not itself involve a "disagree[ment] with any of the amounts included in the Closing Balance Sheet." Rather, it involves a determination of whether the parties' intent regarding Bratt's retained liabilities was based upon the parties' sharing a misunderstanding about an essential term of their agreement. Thus, this aspect of Noble's breach of contract claim is not within the scope of the arbitration clause and is, therefore, not arbitrable.

We recognize that "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement . . . due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the

arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis., Inc.*, 489 U.S. at 475-76 (citations omitted). Here, however, there is no ambiguity regarding the scope of the arbitration agreement. The parties only agreed to arbitrate disagreements about the amounts reflected on the closing balance sheet. Congress's preeminent concern in enacting the FAA—the enforcement of private agreements to arbitrate as entered into by the parties—requires that the parties only be compelled to arbitrate matters within the scope of their agreement, and this is so even when the result may be piecemeal litigation. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The federal policy that favors arbitration is not so broad that it compels the arbitration of issues beyond those agreed to by the parties.

### CONCLUSION

For the foregoing reasons, we REVERSE the district court's order compelling arbitration of the mutual mistake issue, VACATE the entry of judgment with respect to the first count of Noble's counterclaim, and REMAND the case to the district court for further proceedings consistent with this opinion.

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting. The district court did not err in concluding that all aspects of the breach of contract claim brought by Defendant, Noble International, Ltd., against Plaintiff, Bratt Enterprises, Inc., fell within the scope of the arbitration agreement. The majority's approach to resolving the dispute is in contravention of the principles and jurisprudence pertaining to matters of arbitration. I therefore would affirm the district court's judgment compelling arbitration, and respectfully dissent.

The Federal Arbitration Act ("FAA") manifests a strong and liberal federal policy in favor of arbitration of disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985); *see also Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 911 (6th Cir. 2000). The Supreme Court has long recognized that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Construc. Corp.*, 460 U.S. 1, 24-25 (1983).

The majority ignores this well steeped body of federal policy and law in concluding that the parties' dispute regarding the validity of the $1.2 million limitation did not fall within the ambit of the arbitration provision, but that the dispute as to the valuation amount exceeding the $1.2 million limitation did fall within the parameters of the arbitration provision. It is true, as the majority states, that a court must determine whether a dispute falls within the substantive scope of the arbitration agreement before compelling an unwilling party to arbitrate. It is also true that a party cannot be compelled to arbitrate a dispute that it had not previously agreed to arbitrate. However, in concluding that the dispute involving the limitation provision is not subject to arbitration, the majority fails to heed the Supreme Court's directive that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, *whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.*" *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (emphasis added). Instead, the majority resolves the matter against arbitration by improperly interpreting the language of the provision in a narrow fashion while showing deference to Plaintiff's mutual mistake defense. *See Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Air Prods. & Chems., Inc.*, 300 F.3d 667, 676 (6th Cir. 2002) (rejecting the union's "narrow" interpretation of the agreement as not providing for arbitration, and finding that because the union's dispute involved the "interpretation or application of any of the terms or provisions" of the agreement, the dispute was one for arbitration).

To illustrate, the language of the arbitration agreement provides in relevant part:

Within 30 days after the delivery of the Closing Balance Sheet, the Company [Bratt] will notify the Purchaser, [Noble] as to whether it disagrees with any of the amounts included in the Closing Balance Sheet. If such notice is not given, the Closing Balance Sheet will be final and conclusive for all purposes. If the parties are unable to resolve their differences within 60 days of their

> receipt of the Closing Balance Sheet, the Purchaser [Noble] and the Company [Bratt] agree to retain a national accounting firm . . . to arbitrate the dispute and render a decision within 30 days of such retention, which decision would be final and binding for all purposes.

(J.A. at 160-61.)    The majority contends that the clause "disagree with any of the amounts included in the Closing Balance Sheet[,]" as set forth in the arbitration provision limits matters subject to arbitration strictly to disputes involving valuation, and therefore does not encompass any claim as to which party is responsible for the amount owed. This shortsighted and narrow approach fails to consider that implicit in any dispute as to the valuation of any amount on the Closing Balance Sheet is a claim as to which party is responsible for the amount, particularly where the Closing Balance Sheet provided the basis for the Final Purchase Price under the agreement.

In other words, as part and parcel of determining disagreements concerning the amounts included in the Closing Balance Sheet, the parties would expect to also determine by way of arbitration the applicability of the $1.2 million limitation. Thus, it cannot "be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute," and the matter is therefore entitled to a "presumption of arbitrability." *AT&T Techs.*, 475 U.S. at 650 (internal quotation marks and citation omitted).

In summary, when liberally construing the arbitration provision as directed by the Supreme Court and in accordance with federal policy, it is clear that the district court properly concluded that Defendant's claim as to the validity of the $1.2 million limitation was one for the arbitrator. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (noting that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"). I therefore would affirm the district court's judgment compelling arbitration of

all aspects of Defendant's breach of contract claim, and respectfully dissent.