NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0392n.06

No. 08-4550

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Jun 29, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| INHALATION PLASTICS, INC., | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| MEDEX CARDIO-PULMONARY, INC., | ) | |
| | ) | O P I N I O N |
| Defendant-Appellant. | ) | |

BEFORE:   MARTIN, GUY, and McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.**  In this appeal, we are called upon to interpret the scope of an alternative dispute resolution clause. Inhalation Plastics, Inc. ("IPI"), a manufacturer and distributer of medical products, filed suit against Medex Cardio-Pulmonary, Inc. ("Medex") in connection with Medex's acquisition of IPI and the IPI line of products.  In response to the suit, Medex sought to compel arbitration on a portion of IPI's complaint, which Medex claimed was governed by an alternative dispute resolution clause found within one of the parties' agreements.  The district court determined that none of IPI's complaint fell within the scope of the clause, and it therefore denied Medex's request in its entirety.  Medex filed this interlocutory appeal, challenging the district court's determination.  After carefully considering the scope of the alternative dispute resolution clause as well as the nature of IPI's complaint, we have determined that the amount of any damages claimed by IPI falls within the clause's mandates.  We therefore AFFIRM in part and REVERSE in part.

**I.**

The origins of this dispute date back to 2002 when Medex acquired IPI's business of manufacturing and distributing medical products. To consummate the deal, the parties executed a series of agreements. One such agreement, titled the Machinery Equipment and Production Lease ("Production Lease"), called for Medex to lease IPI's machinery and equipment used to manufacture and distribute IPI's products. As part of the Production Lease, Medex was required to make periodic lease payments to IPI. These "Production Lease Payments" formed part of the consideration paid by Medex for the acquisition of IPI. The full consideration was detailed in the Asset Purchase Agreement ("APA"), which expressly incorporated by reference all of the terms of the Production Lease. Production Lease Payments were based in part on how well IPI's businesses performed under Medex. Both the APA and the Production Lease contained anti-assignment provisions, limiting either party's ability to assign its rights or obligations under the agreements.

In December 2004, Medex's parent corporation, Medvest Holdings Corporation, entered into a separate transaction with Smiths Medical Holdco Limited ("Smiths Holdco"), whereby Medvest Holdings was acquired by Smiths Holdco through a merger. As part of the merger, IPI alleges that Medex assigned all of its rights and obligations under its agreements with IPI to Smiths Medical ASD, a business unit of Smiths Holdco. IPI took the position that this deal violated the anti-assignment provisions of its agreements with Medex. IPI informed Medex of its belief, and the two sides worked to negotiate a mutually agreeable outcome. According to IPI, these negotiations resulted in an oral promise from Medex's president that Medex would buy IPI out of the agreements

in exchange for IPI not interfering with the Medex-Smiths Holdco deal. IPI claimed that its president accepted this offer, though Medex never followed through with its end of the agreement.

The parties continued to work towards a mutually agreeable resolution. However, they ultimately failed to reach an agreement, and IPI filed a diversity suit in federal district court against Medex for breach of the written agreements, which were part of Medex's original acquisition of IPI, and breach of the subsequent oral promise from Medex's president that Medex would buy IPI out of the agreements. In its federal complaint, IPI contended that it was harmed by Medex's improper assignment to Smiths Medical because Medex ceased operation of IPI's product line as a result of the assignment, which negatively impacted the Production Lease Payments that IPI was supposed to receive. Pursuant to a motion filed by Medex, the district court dismissed the claim for breach of the written contracts because it found that the oral agreement necessarily superseded the written contracts. *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 2:07-cv-116 at 8, 2007 WL 4270621 (S.D. Ohio Dec. 30, 2007).

IPI then filed an amended complaint, claiming that Medex breached the oral contract or, in the alternative, that Medex breached the written agreements. Count II of this amended complaint alleged that Medex breached various portions of the written agreements. All of these allegations are contained under the single heading "Count II - Breach of Written Contract." While the exact nature of IPI's allegations are difficult to ascertain from the pleadings, all of the following are alleged in some form in Count II: breach of the anti-assignment provisions for the assignment to Smiths Medical; breach of the Production Lease for losing and moving the machinery; breach of the APA

for failing to provide IPI with required reports and access to books and records; and breach of the

Production Lease for improper calculation of Production Lease Payments.

In response to IPI's amended complaint, Medex filed a motion to dismiss or stay and compel

binding dispute resolution on Count II. Medex based its motion on Section 2.1.3 of the APA, titled

"Audit of Production Lease Payments," which reads in relevant part:

> In the event that [Medex] and [IPI] are unable to agree on the amount due for any
> Production Lease Payment to be paid hereunder, [Medex] shall pay to [IPI] that
> portion of the respective Production Lease Payment that is not in dispute, and only
> that portion of any amount alleged to be owed by [Medex] to [IPI] shall be submitted
> for final resolution to the Columbus, Ohio office of PriceWaterhouseCoopers, LLP
> (the "Independent Accountants"); provided, however, that in the event that
> PriceWaterhouseCoopers, LLP, acts at any time in the future as the independent
> auditors for [Medex] or any affiliate of [Medex], then another "big five" accounting
> firm (to be mutually agreed upon by the parties hereto) shall act as the Independent
> Accountants. The Independent Accountants shall make such final determination on
> the basis of such procedures as the Independent Accountants, in their sole judgment,
> deem applicable and appropriate, taking into account the nature of the issue, the
> amount(s) in dispute and the respective positions asserted by the parties. The
> Independent Accountants shall review the disputed matters and as promptly as
> practicable deliver to [IPI] and [Medex] a statement in writing setting forth their
> determination as to the disputed amount. Such determination shall be final and
> binding upon the parties without further right of appeal.

This language is buried within the middle of Section 2.1.3, which consists of one single-spaced

paragraph spanning over a page in length. Aside from the above-quoted language, Section 2.1.3 also

gives IPI the right to review, audit, and examine Medex's books and records that contain information

related to the Production Lease Payments. Both the APA and the Production Lease contain other

clauses that speak to dispute resolution. Specifically, the APA contains a governing-law clause

(stating that Ohio state law governs) and a cumulative-remedies clause. In addition, the Production

Lease contains a remedies clause, a waiver-of-jury clause, and a governing-law clause.

In reviewing Medex's motion to dismiss or compel arbitration, the district court denied the motion in its entirety because it found that IPI's claims did not fall within the scope of APA Section 2.1.3. *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 2:07-cv-116 at 7, 2008 WL 4758680 (S.D. Ohio Oct. 27, 2008). Medex timely filed this interlocutory appeal, and seeks a reversal of the district court's denial of its motion. We are now faced with the difficult task of applying a poorly drafted alternative dispute resolution clause to a poorly drafted pleading in an attempt to determine whether Count II falls within the scope of Section 2.1.3 of the APA.

## II.

Before we address the merits, we first must evaluate whether the court has jurisdiction over this interlocutory appeal. The Federal Arbitration Act provides that when a dispute is governed by a written arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Act then states that an appeal may be taken from an order refusing to stay an action subject to arbitration. 9 U.S.C. § 16(a). The court decides the initial gateway issue of whether a particular dispute falls within the scope of an arbitration clause. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). We therefore possess jurisdiction over Medex's appeal, and it is for us to decide whether the claim falls within the scope of the alternative dispute resolution clause.

## III.

This court reviews the district court's decision to deny arbitration *de novo*. *Bratt Enters. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003). In applying this de novo review, we are mindful of the strong federal policy favoring arbitration, as mandated by the Federal Arbitration Act. *Alticor,*

*Inc. v. Nat'l Union Fire Ins. Co.*, 411 F.3d 669, 672–73 (6th Cir. 2005). All doubts regarding the arbitrability of an issue must be resolved in favor of arbitration. *Id.* However, even with this strong policy favoring arbitration, the court should not compel arbitration between parties who have not so consented. *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006).

An arbitration clause should be interpreted consistent with the terms of the agreement and should be enforced in the same manner as any other privately negotiated contract. *Alticor*, 411 F.3d at 673. For broadly worded arbitration clauses, covering all disputes arising under the agreement, the test for determining the scope of the clause is "whether 'an action could be maintained without reference to the contract or relationship at issue.'" *NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 813 (6th Cir. 2008) (quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003)). When an arbitration clause is not broadly worded, and does not cover *all* disputes arising out of the agreement, only those claims that fall within the scope of the clause can be subject to mandatory arbitration. *See Bratt Enters.*, 338 F.3d at 613. Thus, in these situations, the question of arbitrability should be evaluated on a claim-by-claim basis. *See, e.g., NCR Corp.*, 512 F.3d at 815–818 (finding that some of the litigant's claims were subject to arbitration and others were not); *Bratt Enters.*, 338 F.3d at 613 ("The district court correctly compelled the arbitration on that issue . . . . [But] this aspect of Noble's breach of contract claim is not within the scope of the arbitration clause . . . .").

The alternative dispute resolution clause at issue in this case is not a broadly worded clause, and it does not cover all disputes arising out of the parties' agreements. Specifically, it applies only to disagreements over "the amount due for any Production Lease Payment to be paid hereunder." Further, other sections in the agreements address the potential for dispute resolution through

litigation. Thus, it is clear that the parties contemplated that some disputes might arise which fall outside the scope of APA Section 2.1.3. In Count II, IPI asserts "breach of written contract" based upon various allegations. The issue then is what portion, if any, of Count II falls within APA Section 2.1.3. *See NCR Corp.*, 512 F.3d at 815–818; *Bratt Enters.*, 338 F.3d at 613.

When determining whether a claim falls within the scope of the clause, we look to the plain language of the agreement. *See Albert M. Higley Co.*, 445 F.3d at 863 (noting that the plain text of the contract governs the scope of arbitrability); *Alticor*, 411 F.3d at 671 ("The issue, therefore, is whether the dispute over the meaning of 'occurrence' . . . 'aris[es] out of or relat[es] to' the Premium Payment Agreement."); *Bratt Enters.*, 338 F.3d at 613 ("The plain language of this section demonstrates that the parties agreed to submit disagreements regarding 'any of the amounts included in the Closing Balance Sheet' to arbitration . . . ."). APA Section 2.1.3 provides that if IPI and Medex do not "agree on the *amount due for any Production Lease Payment* . . . that portion of any amount alleged to be owed by [Medex] to [IPI] shall be submitted for final resolution" to the Independent Accountant. The section also states that the Independent Accountant will provide a "statement in writing setting forth their determination as to the *disputed amount*." (emphasis added)

Within Count II of its complaint, IPI makes a number of allegations against Medex. Specifically, IPI claims that Medex breached the agreements by improperly assigning the agreements, losing equipment and machinery, denying IPI access to books and records, and inaccurately calculating Production Lease Payments. IPI argues that none of these claims falls within the scope of the alternative dispute resolution clause because the true nature of its claim is over the improper assignment, which is not subject to alternative dispute resolution. Medex, on the other

hand, contends that Count II in its entirety is subject to mandatory alternative dispute resolution because IPI is simply cloaking a claim for additional Production Lease Payments as a claim for improper assignment in order to avoid the alternative dispute resolution clause.[1] These differing interpretations of APA Section 2.1.3 and IPI's complaint highlight the difficult job we face in applying the clause to Count II of the complaint.

In undertaking this job, we note that IPI's allegations in Count II do not fit within APA Section 2.1.3 insofar as IPI alleges that Medex breached the agreements. Nothing in this section of the APA allows the Independent Accountants to determine whether either party breached the agreements. Thus, the district court did not err insofar as it denied Medex's motion to compel arbitration on the issue of breach. Yet this does not end our inquiry because we bear in mind the strong federal policy favoring arbitration. *See Alticor, Inc.*, 411 F.3d at 672–73. And we note that any doubts must be resolved in favor of arbitration. *Id.* With these mandates in mind, a plain-language reading of APA Section 2.1.3 shows that at least some of Count II falls within the clause; indeed, a portion of the count cites APA Section 2.1.3. Specifically, the damages claimed by IPI under Count II come in the form of additional amounts due for Production Lease Payments. And

---

[1]Medex relies heavily on *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309 (11th Cir. 2002), to support its position that Count II in its entirety is a disguised claim for an "amount due." Medex's argument lacks merit because *Ivax* is factually distinguishable from the present case. In *Ivax*, the court found that the plaintiff's claim that defendant failed to maintain its books and records was actually a disguised claim that the defendant improperly calculated its operating income because from the inception, the parties' dispute had focused on the defendant's calculation of its operating income, which was governed by an alternative dispute resolution clause. 286 F.3d at 1321. Here, IPI has not changed the nature of its complaint from one primarily over an "amount due" to one over an improper assignment; it has alleged an improper assignment since its first pleading. Thus, *Ivax* is not persuasive in this case.

"amount[s] due for any Production Lease Payments" falls within the scope of APA Section 2.1.3. We therefore resolve any doubts in favor of arbitration and hold that the amount of damages owed under Count II should be determined by the Independent Accountants. Under this holding, the district court should determine whether Medex breached any portion of the parties' written agreements as alleged in Count II, and if Medex is found to have breached the agreements, the amount of damages owed to IPI should be determined by the Independent Accountants in accordance with APA Section 2.1.3.

## IV.

For the foregoing reasons, we AFFIRM the district court's order in part and REVERSE in part. We REMAND with instructions for the district court to continue the proceedings consistent with this opinion.