NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0386n.06

No. 13-2237

FILED
May 22, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MATT PAIGE and JAMES GAMMON, | ) ) ) |
| Plaintiffs - Appellants, | ) ) |
| v. | ) ON APPEAL FROM THE ) UNITED STATES DISTRICT ) COURT FOR THE EASTERN |
| BAE SYSTEMS TECHNOLOGY SOLUTIONS & SERVICES, INC., | ) DISTRICT OF MICHIGAN ) ) |
| Defendant - Appellee. | ) |

BEFORE: SURHEINRICH, KETHLEDGE, and WHITE, Circuit Judges.

HELENE N. WHITE, Circuit Judge.

Appellants Matt Paige and Jim Gammon ("Relators") filed a *qui tam* action against Appellee BAE Systems Technology Solutions & Services, Inc. ("BAE"), alleging that BAE violated fraud provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), by submitting false time sheets in connection with fixed-price contracts and accessing proprietary information from Government employees in a sealed bid process. Relators also allege that BAE violated § 3730(h) of the FCA by retaliating against them for cooperating with investigation authorities and "whistleblowing" under the FCA. The district court dismissed Relators' FCA fraud claims with prejudice for failure to state a claim, and dismissed Relators' FCA retaliation claim in favor of arbitration. Relators appeal only the dismissal of their FCA retaliation claim. We REVERSE and REMAND.

I.

A.

Relators Paige and Gammon are former employees of BAE Systems. PID 185. Paige and Gammon joined MTC Technologies[1] in August and November of 2007, respectively. Paige is a retired Major in the United States Army and was employed as a Program Manager at BAE's facilities in Warren, Michigan. PID 183. Gammon was employed as Senior Illustrator for BAE. PID 183–84. Relators worked on Government projects for Tank Automotive and Armaments Command (TACOM) of the United States Army and on Army contracts between BAE and the United States Government with a total value of $30 million to $35 million. PID 185.

Relators claim that throughout their employment at BAE, they complained to management about fraud in the contract bidding process and the false certification of time sheets related to contracts with the Government; they refused to participate in the fraudulent activities and to remain silent about the fraud; despite their complaints, the perpetrators of the fraud were left in place; and Relators were directed to report to the persons who were the subjects of their complaint, and were told not to report to the Ethics Department, Human Relations, or Government investigators, and to keep any reports of illegal and unethical activities in house. PID 221. Relators assert that Paige complained to BAE's Ethics Advisor and Army Criminal Investigation Command, PID 190, Gammon complained to the Ethics Department, Human Relations, and Legal Counsel for BAE, PID 216–17, and both voluntarily provided the U.S. Army Criminal Investigations Command, Major Procurement Fraud Unit, with substantial evidence and information supporting their allegations of fraud. PID 184. Relators claim that in

---

[1]BAE is the successor corporation to MTC Technologies, Inc. PID 184, 258–63. The parties agree that when MTC Technology and BAE merged, BAE assumed MTC's liability, if any, for this action. PID 472.

retaliation for these complaints and protected activities Paige was placed on paid administrative leave for approximately one year and was given minimal responsibilities, harassed, denied transfer, and reassigned when he returned, PID 212–15, and was finally constructively discharged and forced to quit; and Gammon was passed over for promotion and his assignments were limited, PID 219, and was laid off with several other employees. PID 220.

B.

Relators signed nearly identical Employment Agreements with BAE. PID 331, 335. The Employment Agreement outlined the terms of Relators' employment:

> Employer hereby agrees to retain and continue Employee's full time employment by the Employer in accordance with the terms and conditions herein stated. Employee hereby agrees to continue such employment and agrees that, while employed by Employer, he will give his best efforts to devote his entire business time and attention to the affairs of Employer's business.

R. 40–1 (Sealed Document), PID 329, 333. The "terms and conditions" section of the Agreement includes provisions on termination, job duties, salary, confidentiality, work product, and a non-competition clause. The termination provision states: "Regardless of any other provision of the Agreement, Employer and/or Employee, at any time, with or without notice, may terminate employment with or without cause." *Id*. The Agreement also contains a mediation and arbitration provision:

> The Employee agrees that [] *any dispute arising from this Agreement*, which cannot be resolved through normal practices and procedures of the Company, shall be resolved through a mediation/arbitration approach. The Employee agrees to select, with the Company, a mutually agreeable, neutral third party to help mediate *any dispute, which arises under the terms of this Agreement*. If the mediation is unsuccessful, Employee further agrees that *the dispute* shall be decided by binding arbitration under the rules of the American Arbitration Association. The Employee agrees that the decision of the arbitrators shall be binding on both parties and may be entered and enforced in any court of competent jurisdiction by either the Company or Employee. Costs and fees associated with the mediation shall be borne by the Company. The Employee agrees that the prevailing party in the arbitration proceedings shall be awarded

> reasonable attorney fees, expert witness costs and expenses, and all other costs and expenses incurred, directly or indirectly, in connection with the proceedings, unless the arbitrators shall for good cause determine otherwise. [Emphasis added.]

R. 40–1 (Sealed Document), PID 330–31, 334–35.

The district court granted BAE's motion to dismiss the retaliation claim on the basis that the Employment Agreement provides for mandatory arbitration.

## II.

## A.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 16, provides that when a dispute is governed by a written arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 383 F. App'x 517, 520 (6th Cir. 2010) (quoting 9 U.S.C. § 3). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *NCR Corp. v. Korala Ass'n., Ltd.*, 512 F.3d 807, 812 (6th Cir. 2008) (citing *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003); *AT & T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).[2] The parties agree the Employment Agreement contains a valid arbitration clause. The question is whether Relators' retaliation claim falls within the arbitration agreement's scope. This is a determination we review de novo. *Id*.

---

[2] BAE argues that the party refusing to comply with an arbitration agreement has the burden of proving that the claims at issue are unsuitable for arbitration. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 659 (6th Cir. 2003) (en banc). However, *Morrison* deals with the invalidation of an arbitration clause; here we deal with the question whether the clause covers the claim.

"As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id*. at 813. However, "[a] longstanding principle of this Circuit is that no matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'" *Simon v. Pfizer Inc*., 398 F.3d 765, 775 (6th Cir. 2005) (citing *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co*., 464 F.2d 726, 729 (6th Cir. 1972)). "An arbitration clause should be interpreted consistent with the terms of the agreement and should be enforced in the same manner as any other privately negotiated contract." *Inhalation Plastics*, 383 F. App'x at 520. "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Albert M. Higley Co. v. N/S Corp*., 445 F.3d 861, 863 (6th Cir. 2006) (quoting *E.E.O.C. v. Waffle House, Inc*., 534 U.S. 279, 294 (2002)). When an arbitration clause by its terms extends only to a specific type of dispute, a court cannot require arbitration of claims that are not covered by the clause. *Simon*, 398 F.3d at 775 (citing *Bratt Enters., Inc., v. Noble Int'l Ltd*., 338 F.3d 609, 612 (6th Cir. 2003)). "Congress's preeminent concern in enacting the FAA–the enforcement of private agreements to arbitrate as entered into by the parties–requires that the parties only be compelled to arbitrate matters within the scope of their agreement." *Bratt Enter., Inc*., 338 F.3d at 613 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

In determining whether a claim falls within the scope of an arbitration clause, we look to the plain language of the agreement. *Inhalation Plastics*, 383 F. App'x at 521. The arbitration clause at issue here refers to "any dispute arising from this Agreement," "any dispute, which

arises under the term of this Agreement," and "the dispute." Read as a whole and in context, it is clear that these three references all refer to the same dispute. Thus, in context, the more general "any dispute arising from" language must be read to mean "any dispute, which arises under the terms of this Agreement."

So understood, it is clear that the clause does not cover Relators' FCA retaliation claim because that claim does not arise under the terms of the Employment Agreement. First, Relators' claim is purely statutory and exists independent of the Agreement. The anti-retaliation provision of the FCA provides:

> In general.–Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). The FCA retaliation claim is not a claim for violation of the Employment Agreement; it is completely separate from the contract and asserts an independent claim that would exist even without the contract. BAE's argument that Relators' retaliation claim must establish they were "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against *in the terms and conditions of employment*" is unavailing. *See id.* (emphasis added). Although the FCA retaliation statute employs the phrase "terms and conditions of employment," its reach is not limited to instances where employers breach an Employment Agreement addressing the "terms and conditions" of employment. In the instant case, Relators do not argue that the "terms and conditions" of the Employment Agreement were violated; rather, they allege they were discharged, demoted, threatened, and harassed due to their

participation in statutorily protected conduct that is not the subject of the Employment Agreement.

Further, the Employment Agreement nowhere refers to the FCA, retaliation or statutory claims. *See Turi v. Main Street Adoption Serv.*, 633 F.3d 496, 511 (6th Cir. 2011) (holding RICO claim was not arbitrable because it was statutorily based and not referred to in the arbitration clause); *Simon*, 398 F.3d at 776 (holding ERISA and COBRA claims were not within the scope of an arbitration provision where the agreement did not refer to either.)

The arbitration provision in the Employment Agreement is narrower than those in cases addressing broadly-worded arbitration clauses because it explicitly limits the scope of the clause to the disputes arising "under the terms of this agreement" and does not include claims "related" to the agreement or that arise out of the relationship between the parties. *See e.g. NCR Corp.*, 512 F.3d at 812 (addressing the scope of an arbitration clause covering "any controversy or claim arising out of or related to" the contract); *Panepucci v. Honigman Miller Schwartz & Cohn LLP*, 281 F. App'x 482, 486 (6th Cir. 2008) (addressing the scope of an arbitration clause covering "a controversy or claim arising under or related to" the Agreement); *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 396 (6th Cir. 2003) (addressing the scope of an arbitration clause covering: "Any controversy arising out of or relating to any of my accounts, to transactions with you for me, or to this or any other agreement or the construction, performance, or breach thereof."). *See also JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 391 (6th Cir. 2008) (holding "extra language" in an arbitration agreement covering not only disputes over the calculation of earnings, but also "all issues having a bearing on such a dispute" was "pivotal.").

Here, the parties agreed only to arbitrate disagreements that arise under the terms of the Employment Agreement. If, as BAE urges, this court applies the arbitration clause simply

because the dispute concerns the employment relationship, although not arising from the terms of the Employment Agreement, it will have effectively rewritten the parties agreement from "any dispute arising under the terms of this Agreement" to "any dispute arising from your employment." This we may not do.

Because the terms of the Employment Agreement do not contemplate an FCA retaliation claim, Relators' claim is beyond the scope of the arbitration provision and compelled arbitration is inappropriate. We REVERSE the decision of the district court dismissing Relators' 31 U.S.C. § 3730(h)(1) claim in favor of arbitration and REMAND for further proceedings.